William B. GALLOWAY

v.

ROGER WILLIAMS UNIVERSITY.

No. 2000-25-Appeal.

Supreme Court of Rhode Island.

May 25, 2001.

Anthony F. Muri, Providence, For Plaintiff.

Mark Nugent, Moira E. Reynolds, Providence, Paul V. Sullivan, For Defendant.

Present WILLIAMS, C.J., BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on April 3, 2001, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The plaintiff, William B. Galloway (plaintiff or Galloway), has appealed the entry of summary judgment with respect to negligent misrepresentation, fraudulent misrepresentation, breach of contract and promissory estoppel against the defendant, Roger Williams University (defendant or university). After hearing the arguments of counsel and reviewing the record and memoranda submitted by the parties, we are of the opinion that cause has not been shown. We shall therefore decide the issues raised on appeal at this time.

In June 1991, plaintiff was hired initially as director of admissions for the university. Later that year he was named dean of admissions. In 1994, plaintiff was present-

ed with the university's personnel policy manual and signed an acknowledgment of its receipt. The manual provides in part:

"The contents of this Manual are not to be construed as a part of any employment agreement with an employee and do not alter labor agreement provisions. Any employee [sic] employment and compensation can be terminated by the University or the employee at any time with or without notice and cause. Additionally, the policies and practices described herein are subject to change unilaterally without notice to employees by the University as deemed advisable and/or necessary."

In a separate section entitled "Employee Discipline and Termination," the manual states that, notwithstanding any other provision of the personnel policy, "the University reserves the right to terminate any individual's employment and compensation at any time, for any cause, with or without notice."

In 1993, Anthony Santoro (Santoro) became the president of the university. According to Galloway, his relationship with Santoro began harmoniously but became strained over time. The plaintiff maintained that this deterioration began in February 1995, when he and Santoro disagreed about admissions standards. The dispute arose because Santoro was against accepting students whose Scholastic Aptitude Test (SAT) scores fell below 750. Galloway did not agree with this litmus test, and maintained that each student should be evaluated individually and not exclusively on SAT scores. Galloway argued that the university also should consider other barometers of a student's potential, including teacher recommendations, learning disabilities and whether the candidate spoke and read English as a second language. Another dispute took place between plaintiff and Santoro at an admissions committee meeting in February 1996. At this meeting, plaintiff offered prospective students for admission and/or scholarships. Every student that Galloway presented was rejected by Santoro and the other committee members. Galloway maintained that he was then invited into Santoro's private office and asked why he was pushing so hard for these prospective candidates. The plaintiff maintained that he subsequently was advised by the vice president of finance at the university to stop disagreeing with Santoro.

The plaintiff maintained that in March 1996, he met with Michael Schipper (Schipper), vice president of human resources, to inquire whether he was in danger of being terminated. Schipper, according to Galloway, assured him that his job was secure. During this same time frame, plaintiff was approached by a search firm engaged in filling the position of dean of admissions at Newbury College in Brookline, MA. Galloway informed the firm that he was not interested in pursuing a new position because he was happy with his present employment at the university. The plaintiff further alleged that at a meeting on June 1, 1996, Santoro informed him that he would be reappointed to his position as dean of admissions for the next academic year. However, on July 1, 1996, plaintiff's employment with the university came to an abrupt end.

In September 1996, plaintiff filed an action in Superior Court alleging negligent misrepresentation, fraudulent misrepresentation, breach of contract and promissory estoppel. On November 2, 1999, a justice of the Superior Court granted defendant's motion for summary judgment on all claims in the complaint on the ground that plaintiff was an at-will employee and, therefore, the action could not be sustained. Final judgment was entered

on November 17, 1999. Galloway has appealed.

## Discussion

On appeal, plaintiff contended that the motion justice impermissibly engaged in issue resolution in granting the university's motion for summary judgment. Additionally, Galloway asserted that his arguments with respect to the tort, estoppel and contract claims were sustainable notwithstanding the fact that he was an at-will employee of the university. We deem these claims to be without merit.

■ The law in Rhode Island is well settled that this Court will review a grant of summary judgment on a *de novo* basis. *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996). "In conducting such a review, we are bound by the same rules and standards as those employed by the trial justice." *M & B Realty, Inc. v. Duval*, 767 A.2d 60, 63 (R.I.2001) (citing *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996)). The party opposing summary judgment bears the burden of proving, by competent evidence, the existence of a factual dispute. *See Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996). This Court has held that we will affirm a grant of summary judgment if, after reviewing the evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and plaintiff is entitled to judgment as a matter of law. *See Woodland Manor III Associates v. Keeney*, 713 A.2d 806, 810 (R.I. 1998).

■ The law in Rhode Island is clear that employees such as plaintiff "who are hired for an indefinite period with no contractual right to continued employment are [considered] at-will employees [who are] subject to discharge at any time for any permissible reason or for no reason at all." *DelSignore v. Providence Journal Co.*, 691 A.2d 1050, 1051 n. 5 (R.I.1997); *see also Pacheo v. Raytheon Co.*, 623 A.2d 464, 465 (R.I.1993) (stating that "[i]t is not the role of the courts to create rights for persons whom the Legislature has not chosen to protect"). Here, the record discloses that Galloway did not have a written contract with the university and was aware that he was an at-will employee who could be terminated without notice or cause. Further, Galloway acknowledged that he was aware that the university could unilaterally change its policies with respect to the hiring and retention of its employees. We are satisfied that were the facts of this case exactly as Galloway has contended, he nonetheless had actual notice, based on his receipt of the manual, that as an at-will employee he could be terminated at any time, with or without cause. Therefore, we conclude that the trial justice was correct in finding that Galloway's reliance on the so-called promises of Schipper and Santoro was neither reasonable nor actionable.

Accordingly, the plaintiff's appeal is denied and dismissed and the judgment appealed from is affirmed. The papers in this case are remanded to the Superior Court.

Justice LEDERBERG did not participate.