**Joao MELLO**

v.

**Joseph DaLOMBA et al.**

**No. 2000–375–Appeal.**

Supreme Court of Rhode Island.

June 3, 2002.

*The Collected Works of Abraham Lincoln 1861–1862,* at 44 (Roy P. Basler ed.1953).

Keven A. McKenna, Providence, Dana Anthony Parks, for Plaintiff.

Paul S. Cantor, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

· The plaintiff, Joao Mello [1] (plaintiff) appeals a Superior Court order granting judgment as a matter of law in favor of the defendants, Joseph DaLomba (DaLomba) and his company, High Tech Construction, Inc. (High Tech) [2] (collectively referred to

---

1. Various spellings of plaintiff's last name are made throughout the record. We choose the spelling used by plaintiff's attorney in the original complaint.

2. DaLomba's construction company, High Tech, had not yet been incorporated when plaintiff was hired in April 1995. In May 1995, plaintiff began receiving his paychecks

as defendants). The judgment disposed of the plaintiff's nine-count complaint filed after the plaintiff was allegedly fired by DaLomba, his former employer. Because we conclude that the Superior Court trial justice mistakenly granted the defendants' motion for judgment as a matter of law, we sustain the plaintiff's appeal in part and remand the case for a new trial on counts 3, 5 and 7 of the plaintiff's complaint and for a determination of counsel fees on count 1.

This case came before the Court for oral argument on May 6, 2002, pursuant to an order that directed both parties to appear to show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

# I

## Facts and Travel

In April 1995, DaLomba hired plaintiff to do carpentry work for his company, High Tech. The plaintiff alleges that during his employ, defendants secured several construction projects that were financed by the state and federal government. According to plaintiff, when contractors accept work pursuant to a government contract, they are required to pay their employees special compensation. First, employees must receive the "prevailing wage" which in this case, plaintiff argues was $19.65 per hour (compared with his regular wage of $10.50 per hour). Second, plaintiff submits that federal law entitles him to a

"fringe benefit" payment of $9.65 per hour of work done on a government financed project.

The plaintiff contends, and defendants agree, that plaintiff was issued two separate paychecks when he worked on the government projects. The first paycheck, printed by computer, contained the "prevailing wage." The second paycheck, which was handwritten, contained the "fringe benefit." The plaintiff alleges that DaLomba expected him to cash the handwritten fringe benefit check and return the money to him. The plaintiff contends he returned the proceeds of nine fringe benefit checks to DaLomba during the course of his employment. The plaintiff further alleged that in December 1995 he was fired for refusing to continue the practice of kicking back portions of his fringe benefit checks to defendants.

In February 1997, plaintiff filed a complaint in Superior Court alleging that defendants (1) failed to pay him the proper prevailing wage, (2) failed to pay him fringe benefits on two government contracts, (3) filed false reports about these payments to government agencies, (4) committed extortion, and (5) violated the state and federal anti-kickback statutes. The plaintiff requested attorneys' fees, as well as compensatory and punitive damages. Before a jury trial commenced, the trial justice bifurcated the trial reserving the issue of whether plaintiff was entitled to damages until the jury first made its decision on the issue of liability. Therefore, plaintiff was foreclosed from addressing the issue of punitive damages in front of the jury.

Besides plaintiff, three witnesses testified at trial. First, plaintiff called Henry James (James),[3] also one of defendants'

from High Tech and not from DaLomba personally.

**3.** Henry James testified that although his real name was Henry James, DaLomba called him

former employees. James testified that when he was working for defendants, DaLomba issued him two paychecks and that he was required to cash the second handwritten check and return the money to DaLomba. He testified that he returned the money to DaLomba because he felt that if he did "any little thing," he would be fired. Eventually, James voluntarily left his job with defendants in March 1998.

The plaintiff's wife, Bernadette Mello (Bernadette) also testified. She testified that her husband told her that his fringe benefit checks had to be cashed and returned to his boss, DaLomba. She also testified that she accompanied her husband on two occasions to DaLomba's office to drop off the proceeds from the fringe benefit checks. However, Bernadette acknowledged that they never delivered the proceeds directly to DaLomba, but instead left the cash in a mailbox.

Finally, DaLomba testified. He admitted that he paid plaintiff regular wages instead of the prevailing wage for work that plaintiff did at two federally financed construction projects. Furthermore, he admitted that when plaintiff worked pursuant to another federal contract, he was mistakenly paid $1 less than the prevailing wage per hour.

DaLomba also testified that his practice was to issue two separate paychecks for federally financed jobs because it was his understanding that the fringe benefits were to be paid without tax deductions, and therefore, it was easier for accounting purposes to issue separate checks.

At the close of plaintiff's case, defendants moved for a judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. The trial justice granted the motion on all counts

except counts 1 and 2. The plaintiff timely appealed.

## II

### Bifurcation of the Issues at Trial

The plaintiff argues that the trial justice erred by bifurcating the trial on the issues of liability and damages because it prevented the jury from receiving evidence on punitive damages. The plaintiff relies on this Court's decision in *Palmisano v. Toth*, 624 A.2d 314 (R.I.1993), and argues that defendants' failure to make a pretrial motion to strike the punitive damages count required the trial justice to try the liability and damages issues together. The defendants argue that plaintiff has misread *Palmisano* and that the trial justice properly exercised his discretion to manage the issues at trial. We agree.

"Rule 42(b) of the Superior Court Rules of Civil Procedure grants a trial justice broad discretion to separate the issues at trial." *DiLuglio v. Providence Auto Body, Inc.*, 755 A.2d 757, 776 (R.I. 2000). The purpose of the rule is to preserve judicial economy, but this Court approves of bifurcation when to do otherwise may invite confusion or unfair prejudice. *See* Rule 42(b); *Corrente v. Fitchburg Mutual Fire Insurance Co.*, 557 A.2d 859, 861–62 (R.I.1989) (requiring that the trial justice bifurcate bad faith claim from contract claim to prevent unfair prejudice to defendant). Therefore, plaintiff must show that the trial justice abused his discretion for his first argument to prevail. The plaintiff has made no such showing.

In failing to meet his burden, the plaintiff misreads our holding in *Palmisano*. In *Palmisano*, we held that when a plaintiff seeks to engage in pretrial discovery aimed at revealing a defendant's private

---

James Henry because he did not want to confuse him with another employee.

financial information for purposes of supporting his or her punitive damages claim, the best way to balance the countervailing interests of the parties is to require the plaintiff to make a prima facie showing that a viable issue exists for awarding punitive damages during a pretrial hearing. *Palmisano,* 624 A.2d at 320. Only then may the plaintiff proceed with the proposed discovery. *See id.* However, we have made equally clear that a *Palmisano* hearing is recommended only "when a plaintiff has made a demand for discovery of a defendant's financial condition." *Mark v. Congregation Mishkon Tefiloh,* 745 A.2d 777, 781 (R.I.2000). In this case, plaintiff did not make a pretrial inquiry about defendants' finances; thus, the trial justice's duty to consider a *Palmisano* hearing was never triggered. The plaintiff's claim that the trial justice had a duty to incorporate a *Palmisano* hearing into the trial is wholly without merit, because plaintiff sought only to advise the jury of his intention to pursue punitive damages and not to discover defendants' financial situation.

Furthermore, in *Mark,* we stated that when a plaintiff forgoes pretrial discovery into the issue of a defendant's financial condition, "the trial justice, of course, may control the presentation of evidence and opening statements relative to a punitive damage claim by entertaining a motion *in limine* in advance of trial or entering appropriate orders in the course of a pretrial conference conducted pursuant to Rule 16 of the Superior Court Rules of Civil Procedure." *Mark,* 745 A.2d at 781 n. 3. Finally, plaintiff argues that the bifurcated trial deprived him of his Rule 50 "right" to be fully heard on the issue of punitive damages. However, plaintiff's right to be

heard on punitive damages cannot be triggered until he has first established defendants' liability.[4]

Thus, the trial justice did not abuse his discretion in deciding to bifurcate the issues of liability and damages.

### III

### Judgment as a Matter of Law

### Standard of Review

On a motion for judgment as a matter of law pursuant to Rule 50, the trial justice: " 'considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination.' " *Malinowski v. United Parcel Service, Inc.,* 792 A.2d 50, 55 (R.I.2002) (quoting *Raimbeault v. Takeuchi Manufacturing (U.S.), Ltd.,* 772 A.2d 1056, 1062 (R.I.2001)).

"In reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court 'is bound by the same rules and [standards] as the trial justice.' " *Malinowski,* 792 A.2d at 55 (quoting *Raimbeault,* 772 A.2d at 1063).

### A

### Davis–Bacon Act and Attorneys' Fees

■ The plaintiff contends that defendants violated the Davis–Bacon Act, found

---

4. At oral argument, plaintiff asserted that the trial justice erred by failing to consider whether he was entitled to punitive damages

on count 1. However, plaintiff's complaint does not include a request for punitive damages for the allegations contained in count 1.

in 40 U.S.C. § 276a, by failing to pay him the correct prevailing wage for work he did under three government contracts. The plaintiff and defendants stipulated at trial that the unpaid prevailing wages totaled $1,078. Thus, the trial justice ordered that judgment be entered in plaintiff's favor on count 1 for $1,078. Despite plaintiff's acquiescence in the stipulation, his notice of appeal asserts that the amount of the judgment on count 1 is insufficient. The plaintiff made no such objection at trial, and included no argument in support of this claim in his Supreme Court Rule 12A statement. Therefore, we will not review the amount of damages awarded for count 1 because of the failure to raise the issue before the trial justice.[5] *See Harvey Realty v. Killingly Manor Condominium Association,* 787 A.2d 465, 466–67 (R.I.2001) (citing *Rhode Island Depositors Economic Protection Corp. v. Rignanese,* 714 A.2d 1190, 1196–97 (R.I.1998) (restating our well settled raise-or-waive rule)).

In count 2 of his complaint, plaintiff seeks to recover attorneys' fees under G.L. 1956 § 9–1–45 for the breach of contract claim in count 1. At the close of his decision on defendants' motion for judgment as a matter of law, the trial justice specifically reserved ruling on the attorneys' fees request and asked the parties to "discuss the issues still remaining * * * that is, whether or not counsel fees are due in this matter." The plaintiff implies that the trial justice decided to deny the claim for attorneys' fees count by including count 2

in his appeal. However, it is clear from the record that no such determination was made.

■ "It is well settled that attorneys' fees may not be appropriately awarded to the prevailing party absent contractual or statutory authorization." *Insurance Company of North America v. Kayser–Roth Corp.,* 770 A.2d 403, 419 (R.I.2001) (citing §§ 9–1–33 and 9–1–45). Pursuant to § 9–1–45, attorneys' fees may be awarded in breach of contract actions when the court:

"(1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or

(2) Renders a default judgment against the losing party."

The plaintiff cannot complain to this Court that he is entitled to attorneys' fees under § 9–1–45 before the trial justice makes his determination. Instead, upon return of this case to the Superior Court, a decision should be made about the propriety of attorneys' fees on count 1. Therefore, plaintiff's appeal of counts 1 and 2 is denied and dismissed.

**B**

**Civil Liability for Criminal Conduct**

■ The plaintiff next argues that the trial justice erred by granting defendants' motion for judgment as a matter of law on counts 3, 5[6] and 7 of his complaint. Counts 3, 5 and 7 allege that a variety of substantive crimes were committed by defendants, and that plaintiff is entitled to

---

**5.** Furthermore, we note that the United States District Court for the District of Rhode Island recently addressed the issue of whether a plaintiff has a private cause of action under the Davis–Bacon Act in the first place. *See United States v. TLT Construction Corp.,* 138 F.Supp.2d 237, 240–41 (D.R.I.2001) (holding that plaintiff must first seek an administrative determination of the amount of prevailing wages owed under Davis–Bacon Act before

bringing a claim for unpaid wages under § 3 of the Act). Had defendants' challenged plaintiff's ability to maintain count 1 of his complaint, it appears that defendants may have prevailed.

**6.** Count 5 seeks to impose liability on High Tech for DaLomba's actions in counts 3 and 7.

recover in a civil action pursuant to § 9–1–2. Section 9–1–2 is the "enabling act giving a person injured as a result of a crime or offense a right of action where none existed at common law." *Lyons v. Town of Scituate,* 554 A.2d 1034, 1036 (R.I.1989) (citing *DaCosta v. Rose,* 70 R.I. 163, 167, 37 A.2d 794, 796 (1944)). Pursuant to § 9–1–2, a plaintiff can bring a cause of action even if no criminal complaint for the crime or offense has been filed. *See Bouchard v. Price,* 694 A.2d 670, 678 n. 3 (R.I.1997) (citing *Lyons,* 554 A.2d at 1036).

First, plaintiff alleged that DaLomba forced him to kick back money to him from cashed fringe benefit checks in violation of G.L.1956 § 11–42–1.2 and 18 U.S.C. § 874. Section 11–42–1.2 provides that:

> "Any person who by force, intimidation, or threat of procuring dismissal from employment * * * induces any person employed in the construction, completion, or repair of any public building, public work, or building or work financed in whole or in part by loans or grants by the state * * * or any person receiving or benefiting from the grant or loan, to give up any part of the compensation to which the person is entitled under a contract of employment, shall be imprisoned * * *."

The federal counterpart, 18 U.S.C. § 874, prohibits identical conduct in connection with federally financed construction projects. The plaintiff also alleges that this conduct constitutes extortion in violation of § 11–42–2. The extortion statute provides that:

> "[w]hoever, verbally * * * maliciously threatens any injury to the person, reputation, property, or financial condition of another, or threatens to engage in other criminal conduct with intent to extort money or any unlawful pecuniary advantage, or with intent to compel any person to do any act against his or her will

* * * shall be punished * * *." Section 11–42–2.

The trial justice granted defendants' Rule 50 motion on plaintiff's state kickback and extortion claims for failure to present evidence of "threat and peril of bodily harm or threat of bodily harm as elements of the crimes." The trial justice similarly dismissed the federal claim, finding that § 9–1–2 did not provide civil liability for federal crimes.

In the instant case, the trial justice erred in relying on the absence of the threat of bodily harm to dismiss the state claims since the anti-kickback and extortion statutes contemplate liability for threats of non-bodily harm. *See* §§ 11–42–1.2, 11–42–2. Furthermore, the trial justice erred by assuming that defendants' could not be civilly liable for federal criminal conduct under § 9–1–2 because there is no such limitation within the statute.

■ The state and federal anti-kickback statutes require plaintiff to introduce evidence of force, intimidation or threat of dismissal on defendants' behalf. Furthermore, "the crime of extortion consists of two basic elements: (1) an oral or a written threat to harm a person or property, (2) accompanied by the intent to compel someone to do something against his or her will." *State v. Price,* 706 A.2d 929, 933 (R.I.1998). In this case, plaintiff testified that "[DaLomba] told me to [cash the check and put it in his mailbox], and if I didn't do that, I was going to be fired and I would become unemployed." The defendants' argue on appeal that this statement should be interpreted only as evidence of plaintiff's subjective belief that he would be fired, and that no inference can be drawn that DaLomba actually threatened plaintiff. We disagree.

On a Rule 50 motion the trial justice is required to draw all reasonable inferences

in plaintiff's favor. Had the trial justice taken this inference as he was required to do so, issues of fact remained for the jury to decide and the Rule 50 motion should not have been granted on plaintiff's anti-kickback and extortion claims.

Also included in count 3 are plaintiff's assertions that defendants failed to pay him fringe benefit wages on two federal jobs in violation of G.L.1956 § 28–14–2. The trial justice did not address plaintiff's claim under § 28–14–2, although he clearly entered judgment for defendants on all allegations in count 3. Section 28–14–2 requires that an employer (1) establish a regular payday, (2) pay wages in full on that day, (3) notify its employees in the event of a change in the scheduled payday, (4) schedule the payday within nine days of the end of the payroll period, and (5) pay an employee upon demand if the employee is absent on the scheduled payday. Because the trial justice failed to evaluate plaintiff's § 28–14–2 claim in his Rule 50 decision, plaintiff's appeal on this point is also sustained and the case shall be remanded for a new trial on each claim in count 3 of plaintiff's complaint.

Finally, plaintiff argues that the trial justice prematurely disposed of count 7 of his complaint, complaining that defendants filed false reports relating to his payroll in violation of G.L.1956 § 11–18–1; G.L.1956 § 11–41–4 and 18 U.S.C. § 1001. The trial justice failed to evaluate plaintiff's allegations under § 11–41–4. Therefore, it was error to grant defendants' motion on this claim absent a proper Rule 50 evaluation. Furthermore, as we stated above, it was error for the trial justice to presume that plaintiff could not pursue his claim under 18 U.S.C. § 1001 pursuant to § 9–1–2.

Section 11–18–1 states that:

"No person shall knowingly give to any agent, employee, servant in public or private employ, or public official any receipt, account, or other document * * * which contains any statement which is false or erroneous * * * and * * * is intended to mislead the principal, master, employer, or state, city, or town of which he or she is an official."

The trial justice rejected plaintiff's attempts to recover under either statute because he determined that plaintiff failed to provide any evidence that defendants actually had filed any reports with any government agency. We disagree.

DaLomba testified that he had failed to pay the plaintiff certain wages that he was entitled to pursuant to the government contracts. The plaintiff's attorney showed DaLomba a payroll certification form that he had filed with the Woonsocket Housing Authority, a federally financed project. DaLomba admitted that he had signed the form in which he swore that he had paid all persons working under the contract the federal prevailing wage. It appears from his testimony that the jury could have drawn the inference that DaLomba knowingly filed a false document in violation of § 11–18–1. Therefore, it was error for the trial justice to grant the defendants' Rule 50 motion on count 7.

## Conclusion

Accordingly, the plaintiff's appeal is denied in part and sustained in part. The judgment of the Superior Court is vacated on counts 3, 5 and 7 and the accompanying claims for damages and counsel fees for count 1. The papers of the case are remanded to the Superior Court for a new trial consistent with this opinion.