## In re ESTATE OF Anna CANTORE.

### No. 2001–568–Appeal.

Supreme Court of Rhode Island.

Jan. 22, 2003.

Jeanne Scott and William Landry, Providence, for Plaintiff.

Laurent L. Rousseau and Jeremiah C. Lynch, III, Newport, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

"Happy families are all alike; each unhappy family is unhappy in its own way."[1] Often that unhappiness is caused by the failure of relatives to peacefully solve family problems, relying instead on litigation to settle such disputes. Unfortunately, this case falls into that category. Specifically, Antoinette Breed (Breed) appeals from a Superior Court judgment denying and dismissing her appeal from a decision rendered by the Probate Court of the City of Newport (Probate Court) concerning the estate of her mother, Anna Cantore (Cantore). This case came before this Court for oral argument on December 4, 2002, pursuant to an order that directed both parties to appear and show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

## I

### Facts and Travel

In August 1987, Cantore left her two-family home on Memorial Drive in Newport, Rhode Island, and moved in with her daughter Mary Chaves (Chaves), Breed's sister. At that time, Cantore executed a general power of attorney in favor of Chaves, giving her exclusive control over Cantore's affairs. In April 1994, while still living with Chaves, Cantore executed a will in which she devised her personal property equally to her two daughters, Chaves and Breed. Additionally, the will stated that each daughter was to receive 40 percent of Cantore's real property, with the remaining 20 percent to be placed in trust with both daughters as co-trustees. The trust would then convey the remaining 20 percent share of real property to Chaves if she did not submit a bill to Cantore for caring for her. If, however, Chaves did submit a bill to Cantore, then the trust would convey the remaining 20 percent share to Breed.

---

1. Leo Tolstoy, Anna Karenina 3 (Constance Garnette trans., Random House 1939) (1886).

In August 1994, Cantore left Chaves's care and moved into a nursing home. By August 1995, Cantore became very ill. Therefore, Breed petitioned the Probate Court to name herself and Chaves as limited co-guardians of Cantore's estate and person. Despite Chaves's objection, the Probate Court appointed the two sisters as co-guardians. Chaves refused the appointment.

Cantore passed away in February 1996 and her will was presented to the Probate Court. Chaves and Breed were appointed co-executrices of the estate. Breed petitioned the Probate Court for an accounting by Chaves, contending that certain funds went unaccounted for while Chaves had full control over Cantore's affairs. The Probate Court granted the petition and the parties proceeded to litigation.

During the course of the litigation Breed took varying positions as to how much money was unaccounted for, alleging different amounts at the various hearings. At times she would allege $75,000 went unaccounted for and at other times she would state that the correct amount was $50,000. At one point she asserted that as much as $107,630 was missing. After a series of hearings conducted over a span of four and a half years, the Probate Court, with the assistance of an independent accountant, determined the proper amount of unaccounted funds to be $28,216 and ordered Chaves to repay the estate. The Probate Court also ordered Chaves to pay $5,000 into the estate that Cantore paid her for contracting services and $3,250 for the independent accountant's fees. Furthermore, the Probate Court determined that the 20 percent share of real property held in trust would be conveyed to Chaves pursuant to the will because she reimbursed the estate $5,000 and thus had not actually charged Cantore for the care she provided.

Subsequent to Chaves's reimbursement of the estate in satisfaction of the Probate Court's judgment, both sisters filed claims with the Probate Court for services rendered to the estate and their attorneys submitted claims for attorney's fees. Additionally, Breed argued that the Probate Court should order Chaves to pay to the estate prejudgment interest on the $36,466 that she reimbursed the estate.

On June 7, 2000, the Probate Court awarded both parties executor fees, finding that Breed was entitled to $9,140 in such fees and Chaves was entitled to $2,550. Additionally, the Probate Court determined that both attorneys' fees were reasonable, but nonetheless reduced the amount of those fees to be paid out of the estate because of the misdeeds of their clients. More specifically, the Probate Court cited Chaves's lack of accounting and self-payment of $5,000 and the fact that Breed "strayed into self interest" by significantly varying the amounts she alleged went unaccounted for during the time when Chaves had power of attorney. Therefore, the Probate Court awarded Chaves attorney's fees from the estate in the amount of $16,277, which was $3,000 less than she requested. The Probate Court also awarded Breed's attorney's fees to be paid from the estate in the amount $11,615, which was $1,000 less than requested. Finally, the Probate Court refused to add prejudgment interest to the $36,466 it ordered Chaves to pay to the estate. The Probate Court determined that the prejudgment interest statute, G.L. 1956 § 9–21–10, applies only to an award of damages and not to an order for reimbursement, as was the case here.

Breed timely appealed the judgment

pursuant to G.L.1956 § 33–23–1,[2] which authorizes a Superior Court trial justice to hear appeals from the Probate Court *de novo*. Breed now appeals the portions of the Superior Court order concerning prejudgment interest and Chaves's attorney's fees.

## II

### Attorneys' Fees

A trial justice's award of attorney's fees is subject to review for abuse of discretion. *Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.*, 763 A.2d 590, 598 (R.I.2000). "In conducting such a review, the discretion exercised by the trial justice must be reviewed 'in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law.'" *Id.* (quoting *Hartman v. Carter*, 121 R.I. 1, 5, 393 A.2d 1102, 1105 (1978)).

The trial justice relied on G.L.1956 § 33–18–19 in his decision to award attorney's fees to Chaves to be paid from the estate. Section 33–18–19 "vests the Probate Court with jurisdiction to award counsel fees for services rendered to the estate of decedents or incompetents." *In re Estate of Lagasse*, 723 A.2d 792, 792 (R.I. 1998) (mem.) (citing *Black v. Wiesner*, 114 R.I. 609, 337 A.2d 812 (1975)). Specifically, § 33–18–19 provides in pertinent part that:

"Any legally interested person instituting a suit or proceeding shall, in case of failure to prosecute the suit successfully, be entitled to no costs, and shall be personally liable to the adverse party for costs, and in no event shall those legally interested persons * * * be entitled to any reimbursement for the expenses, unless the proceedings or defense * * * shall be found * * * to have been necessary for the protection of the estate."

Breed takes issue with the Superior Court's decision to award Chaves's attorney's fees to be paid from the estate. Specifically, Breed contends that Chaves's attorney's fees incurred in defense of the accounting action were not for the benefit of the estate, but rather served to defend against the consequences of Chaves's own mismanagement of the estate. Therefore, according to Breed, none of Chaves's attorney's fees should be paid from the estate.

The trial justice's award of $16,277 in attorney's fees to Chaves's attorney reflected the determination that she was forced to defend against Breed's illusionary and varying claims for an accounting of funds. The trial justice held, however, that the estate should not be burdened with the total expense of determining the money due to the estate because some money indeed had been unaccounted for. Therefore, the trial justice allotted the remaining $3,000 in Chaves's attorney's fees to be paid out of her own pocket rather than from the estate.

As we explicitly have stated, we will reverse an award of attorney's fees only for an abuse of discretion. In this case Breed has failed to demonstrate how the trial justice committed an abuse of discretion. Furthermore, we conclude that the

2. General Laws 1956 § 33–23–1(d) reads, in pertinent part:

"An appeal under this chapter is not an appeal on error but is to be heard de novo in the superior court. * * * [T]he findings of fact and/or decisions of the probate court may be given as much weight and deference as the [S]uperior [C]ourt deems appropriate, however, the [S]uperior [C]ourt shall not be bound by such findings or decisions."

trial justice's award of attorney's fees to Chaves's attorney represented an adequate balance that addressed both Chaves's failure to account for missing funds and Breed's self-interested actions. Accordingly, we affirm the award of $16,277 from the estate to Chaves's attorney.

## III

### Prejudgment Interest

 Prejudgment interest on civil actions is set out in § 9–21–10(a), which provides, in relevant part:

> "In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein."

In *Gott v. Norberg*, 417 A.2d 1352 (R.I. 1980), this Court held that § 9–21–10(a) did not "provide for interest on tax refunds awarded upon review of administrative proceedings" because the Legislature's additions of the words "civil action" to § 9–21–10(a) in 1976 was merely "intended to equalize the right of tort and contract litigants to collect interest on judgments." *Id.* at 1357. In this case Breed brought an action in the Probate Court for an accounting of Cantore's estate, which Chaves later reimbursed. It is neither a contract claim nor a tort claim; rather it is an action for reimbursement, which is not the equivalent of a civil action for pecuniary damages. *See Rhode Island Insurers' Insolvency Fund*, 763 A.2d at 597. Therefore, in light of this Court's interpretation of § 9–21–10(a), there is absolutely no authority to award prejudgment interest in this case. Accordingly, we hold that the trial justice was correct in refusing to award prejudg-

ment interest to the amount that Chaves was required to reimburse the estate.

### Conclusion

For the reasons set out above, Breed's appeal is denied and dismissed. The judgment of the Superior Court is affirmed.

The papers of the case may be returned to the Superior Court.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.