Robert T. **KELLS**

v.

**TOWN OF LINCOLN et al.**

No. 2004–239–Appeal.

Supreme Court of Rhode Island.

June 3, 2005.

Robert D. Goldberg, Pawtucket, for Petitioner.

James P. Marusak, Providence, for Respondent.

Present: WILLIAMS, C.J.,
FLAHERTY, SUTTELL, and
ROBINSON, JJ.

## O P I N I O N

FLAHERTY, Justice.

Does the charter of the Town of Lincoln permit the town administrator to terminate, without a hearing or just cause, the employment of the Lincoln chief of police? What is the proper process, pursuant to the charter, for removing the chief of police, and has the current town administrator attempted to circumvent that process? These are the essential questions in the defendants' appeal of a Superior Court judgment obtained by the plaintiff, Robert T. Kells, against the Town of Lincoln, by and through its finance director, Stephen Woerner, and current town administrator, Sue P. Sheppard, which enjoined the defendants from removing the plaintiff from his position as chief of police. The defendants contend that the Superior Court erroneously granted summary judgment for the plaintiff, and improperly awarded attorney's fees to him in accordance with G.L.1956 § 9–1–45 for actions arising out of breach of contract. This case came before the Court for oral argument on April 6, 2005, pursuant to an order directing all parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we will proceed to decide the case at this time. For the reasons stated below, we deny the defendants' appeal.

### Facts and Procedural History

The issues in this case center primarily on how certain sections of the Lincoln Town Charter should be applied.[1] Specifi-

---

1. Because several sections are at issue, we provide them here for reference throughout this opinion. The charter of the Town of Lincoln is, in pertinent part, as follows:

 Article VI, section 6–6(1) provides:
 The town administrator shall: "Appoint and, when necessary for the good of the services, remove all officers and employees of the Town except as otherwise provided by this Charter, and except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office* * *[.]"
 Section 6–6(4) provides:
 The town administrator shall: "Negotiate contracts on behalf of the Town subject to the approval of the Town Council[.]"
 Article IX, section 9–1(1) provides:
 "There shall be a Police Department the head of which shall be the Chief of Police who shall be a former or active police officer, with at least 10 years' experience, at least five of which are in a supervisory capacity, and a rank of sergeant or above in any organized Police Department. He/she shall be appointed by the Town Administrator for an indefinite term and shall be subject to removal by the Town Administrator,

 in accordance with provisions of this Charter. [Amended 11–10–2002]."
 Article XIV, section 14–10 provides:
 "Officers of the Town appointed for an indefinite term may be removed by the office or agency which appointed them. If any such officer appointed for an indefinite term refuses to resign when asked for his resignation by the proper authority, the Town Administrator if his office made the original appointment or nomination, or any member of the Town Council if the Town Council made the original appointment, may prefer charges against said officer before the Town Council, requesting his removal. The Council after giving written notice of said request and of the time and place of the hearing delivered to said officer or mailed by certified mail to said officer at his last known address, together with a copy of said charges at least 10 days prior to the date of the hearing, may after hearing on said charges remove said officer by an affirmative vote of a majority of the entire Town Council. Said hearing shall be public if said officer so requests by a written demand filed with the Town Council two days prior to the date of the hearing."

cally, the parties differ in their interpretations of the procedures governing the removal of the town's chief of police. In November 2001, then Lincoln Town Administrator Jonathan Oster appointed Robert T. Kells to the position of chief of police. Approximately one year later, on November 19, 2002, the Lincoln Town Council ratified an employment contract between Lincoln and Kells. The critical language of the agreement is as follows:

"For application of compensation and benefit purposes only, the term of this employment Agreement is for three years beginning December 1, 2002 and continuing through November 30, 2005. It is understood and agreed that in accordance with Sec. 9–1 of the Charter, the Chief's appointment is for an indefinite term and subject to removal in accordance with the provisions of the Charter."

On January 8, 2003, defendant Shepard,[2] on her first day in office as the new Lincoln town administrator, fired Kells without cause[3] and effective immediately. She also informed him that his contract with the town was void. Later that day, Kells sought and was granted a temporary restraining order preventing defendants from removing him from his position as chief of police or otherwise interfering with him in the performance of his duties.

After defendants answered and counterclaimed for declaratory relief, the parties were heard on December 2, 2003, on cross-

Section 14–11 provides in pertinent part:
"The jurisdiction of the Town Council shall extend to all cases of appeals from dismissals, suspensions, demotions or transfers or layoffs of appointive officers and employees of the Town, whether in the classified service or not, except those in the School Department working in an administrative, supervisory or teaching capacity, and except those provided for otherwise in this Charter in § C14–10. * * * In the event that any person is dismissed, suspended, demoted or transferred as provided herein, he may appeal in writing to the Town Council within 10 days from such dismissal, suspension, demotion, transfer or layoff. Unless such appeal has been withdrawn, the Council within 10 days from the filing of such appeal, shall give the dismissed, suspended, demoted or transferred person, or person laid-off and the department head, board or other agency involved, the opportunity to be heard at a hearing before said Council. After such hearing, which shall be public at the option of the person making the appeal, the action of the Council shall be final and binding, and shall not be subject to appeal or further revision except as may be otherwise specifically provided by law. The review afforded herein shall be deemed to be alternative to and/or in addition to that granted by general and special state laws to certain classes of Town employees."

Article XVII, section 17–3 was amended on November 10, 2002. Section 17–3(3) formerly provided:
"The term of office of all officers, members of boards, commissions and committees of the town appointed with the approval of or appointed or elected by the town council shall be concurrent with the term of the town council unless otherwise provided in this Charter."
Effective January 7, 2003, section 17–3(3) now provides:
"The term 'officer or officers' as used in this Charter shall refer only to the Town Administrator, members of the Town Council, the Town Clerk and the Finance Director. This section shall control the use of the term 'officer(s)' as to any other usage in this Charter that is inconsistent herewith."

2. At the time that Kells's contract was ratified by the town council, Sheppard, having defeated Oster in his bid for reelection, was town administrator-elect, though she was not inaugurated until early January. Oster was still town administrator at the time Kells's contract was executed and ratified. The defendants allege that "Oster signed a novel three-year contract with Kells which was blatantly designed to extend beyond the two-year term of the newly elected Administrator."

3. The statement of facts agreed upon by the parties sets forth that "Kells was not terminated for cause."

motions for summary judgment. The hearing justice in the matter examined both the charter and Kells's contract. He found that the contract neither subverts nor frustrates the charter, nor does it conflict with or contradict the process set out in the charter for removal of employees. The hearing justice declared that under his reading and interpretation of the clear provisions of the charter, the chief of police serves for an indefinite term and cannot be fired at the "whim" of the town administrator, but only "for the good of the service." The justice further found that if the chief is to be terminated, he is entitled to a hearing at which the specific charges motivating termination must be demonstrated. The hearing justice granted plaintiff's motion for summary judgment, and denied that of defendants. He determined that, irrespective of contractual status, the chief of police is entitled to certain substantive and procedural job protections under the charter, that were ignored by defendants in their attempt to remove Kells from office. The hearing justice permanently restrained and enjoined defendants from removing Kells from office, but, crucially, noted that nothing in his order would bar Kells's removal if warranted and if proper procedures were followed.

Kells later filed a motion for an award of attorney's fees pursuant to G.L.1956 § 9-1-45,[4] which was granted by the court. The defendants have timely appealed the judgment of the trial court, including the award of attorney's fees.

### Standard of Review

 "It is well settled that this Court reviews the granting of a summary judg-

ment motion on a *de novo* basis." *M & B Realty, Inc. v. Duval,* 767 A.2d 60, 63 (R.I.2001) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.,* 682 A.2d 455, 457 (R.I.1996)). "In conducting such a review, we are bound by the same rules and standards as those employed by the trial justice." *Id. See Rotelli v. Catanzaro,* 686 A.2d 91, 93 (R.I.1996). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996). "[W]e will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Woodland Manor III Associates v. Keeney,* 713 A.2d 806, 810 (R.I.1998) (quoting *Rotelli,* 686 A.2d at 93).

### Analysis

### I

### The Contract

 We first address defendants' contention that Kells's contract with the Town of Lincoln is invalid and unenforceable, and that it impinges upon defendant Sheppard's rights to hire or fire a police chief according to her own desires. We disagree. The plain terms of the Lincoln Town Charter give the town administrator the power to "[n]egotiate contracts on the behalf of the Town subject to the approval

4. General Laws 1956 § 9-1-45 provides:
 "The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:

 (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
 (2) Renders a default judgment against the losing party."

of the Town Council." "[W]hen construing a municipal charter, the usual rules of statutory construction apply." *Providence Teachers Union Local No. 958 v. Napolitano,* 554 A.2d 641, 643 (R.I.1989); *see also Coventry School Committee v. Richtarik,* 122 R.I. 707, 713, 411 A.2d 912, 915 (1980). "It is the accepted rule that the provisions of city charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question. Further, the words used therein should be given their usual and ordinary meaning." *Carter v. City of Pawtucket,* 115 R.I. 134, 138, 341 A.2d 53, 56 (1975). Thus, giving the words of charter section 6–6 their plain and ordinary meaning, it seems perfectly clear to us that the town administrator may negotiate contracts, subject to a blessing by the town council, including an agreement with the chief of police.

 Moving to the terms of the agreement, and the issue of whether Kells's contract impinges upon the present town administrator's rights to appoint and terminate officers and employees, we see no conflict between the contract and the charter.[5] Of particular concern to defendants is the three-year term of Kells's contract, given that the charter establishes that the chief of police shall be appointed for an "indefinite term." However, by its very terms, the contract both anticipates and resolves any durational issue. The agreement establishes a three-year term, but, critically, specifies that the three-year period is "for application of compensation and benefit purposes *only.*" (Emphasis added.) Addressing the charter provisions, the contract provides that "[i]t is understood and agreed that in accordance

with Sec. 9–1 of the Charter, the Chief's appointment is for an indefinite term and subject to removal in accordance with the provisions of the Charter." Thus, despite the three-year term for benefit and compensation purposes, the parties acknowledged that the chief's tenure is for an indefinite period. Despite its recitation of wages, hours, and benefits, nothing in the agreement conflicts with or alters charter provisions relating to the removal of the chief of police. Because the contract is in harmony with the charter provisions, there is utterly no merit to defendants' arguments that it is a void and unenforceable interference with the town charter.

## II

### The Removal Process

The defendants contend that the town administrator has unfettered discretion in the hiring and firing of political appointees who hold policymaking positions in the administration, and that as a result, Sheppard was well within her rights to remove Kells in order to further her own political goals and objectives and those of her administration. However, we do not agree that defendants' argument is applicable in this case. The United States Supreme Court has determined that "politically motivated firings of non-civil-service governmental employees were unconstitutional under the First and Fourteenth Amendments," but limited such protections to nonpolicymaking employees. *Montaquila v. St. Cyr,* 433 A.2d 206, 208 (R.I.1981) (citing *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Several years later, the United States Supreme Court revisited the issue in *Branti v. Finkel,* 445 U.S. 507, 519, 100 S.Ct.

---

**5.** We take note of the "old and venerable rule that contracts that contravene applicable state statutes are illegal, and therefore no contractual rights can be created or enforced there-

under." *State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU,* 747 A.2d 465, 469 (R.I.2000). However, we see no such conflict here.

1287, 63 L.Ed.2d 574 (1980) when it held "that the continued employment of an assistant public defender cannot properly be conditioned upon his allegiance to the political party in control of the county government. The primary, if not the only, responsibility of an assistant public defender is to represent individual citizens in controversy with the State." In *Branti,* the Supreme Court reasoned that when assessing politically motivated firings, "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. 1287.

This Court addressed a similar issue in *Montaquila,* when it addressed the discharge, for purely political reasons, of the town solicitor and assistant solicitors for the Town of Coventry. Holding that town solicitors are not entitled to protection from patronage dismissals, we determined that:

> "A town solicitor holds an important and sensitive position in ensuring the implementation of the policies of the administration. This arises as a result of the role that a town solicitor plays in the formation of policy. While he may not be a policymaker per se, he is nevertheless privy to the discussions and information involved in the policymaking process in his role as chief legal advisor to the town. This sensitive position requires trust and loyalty between the town administration and the town solicitor. Party affiliation is a permissible way for the town manager to ensure that the necessary trust and loyalty exist." *Montaquila,* 433 A.2d at 210.

However, key to our holding that the town solicitors had no legally protected interests in their jobs, and thus were susceptible to termination without notice or a hearing, is the theory that "[p]roperty interests * * *

are created and their dimensions are refined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 212 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971)). In *Montaquila,* the solicitors explicitly served 'at the pleasure of the manager,' thus in this Court's opinion, "the political nature of plaintiffs' positions renders any belief of entitlement to future employment unfounded, *absent firm understandings to the contrary.*" *Id.* (Emphasis added.)

 We need not address the nature of the chief of police's role as a political appointee or policymaker in the town administration because, and irrespective of the existence of a contract between the town and the chief of police, the Lincoln Town Charter contains the explicit interest-creating language that was lacking in *Montaquila.* "The provisions of a town charter are the organic law of the town with respect to municipal affairs." *Borromeo v. Personnel Board of Bristol,* 117 R.I. 382, 385, 367 A.2d 711, 713 (1977). Governing the town administrator's powers to appoint and remove town officers and employees, Article VI, section 6–6 of the charter lays out in explicit terms the standard to be employed when the town administrator seeks to terminate a Lincoln town employee. Section 6–6(1) states that the town administrator shall, "when necessary *for the good of the services,* remove all officers and employees of the Town except as otherwise provided" by the charter. (Emphasis added.) The defendants argue that this language permits the town administrator to remove an employee at his or her own discretion. In contrast, Kells contends that the charter's language prevents the town administrator from remov-

ing an officer or employee when cause does not exist.

In an explicit and unequivocal holding, we previously have held that the phrase "for the good of the service" "has the effect of limiting the valid exercise of that power to dismiss for cause." *Aniello v. Marcello*, 91 R.I. 198, 207, 162 A.2d 270, 274 (1960). It is "that type of cause which in law constitutes a valid ground for the exercise of the power to remove," and entitles the petitioner "to a specification of charges, due notice of a hearing, and an opportunity to be heard and offer evidence in defense or explanation." *Davis v. Cousineau*, 97 R.I. 85, 90, 196 A.2d 153, 156 (1963). Thus, in accordance with the plain and unambiguous terms of charter section 6–6(1), the town administrator may remove town officers and employees only after "legally sufficient cause is shown." *Salisbury v. Stone*, 518 A.2d 1355, 1359 (R.I.1986). In light of this standard, defendants' contention that "for the good of the services," "permits removal based upon the judgment and discretion of the Town Administrator," is clearly wrong, and ignores the interest-creating nature of section 6–6(1).

The defendants further allege that Kells's position is terminable at the will of the town administrator based on the indefinite nature of its duration. Article IX, section 9–1(1) establishes that the chief of police "shall be appointed by the Town Administrator for an indefinite term and shall be subject to removal by the Town Administrator, in accordance with provisions of this Charter." The defendants point to case law which holds that employees "who are hired for an indefinite period with no contractual right to continued employment are [considered] at-will employees [who are] subject to discharge at any time for any permissible reason or for no reason at all." *Galloway v. Roger Williams University*, 777 A.2d 148, 150 (R.I.2001) (quoting *DelSignore v. Providence Journal Co.*, 691 A.2d 1050, 1051 n. 5 (R.I.1997)). We adhere to this rule because "[i]t is not the role of the courts to create rights for persons whom the Legislature [in this case, the Town of Lincoln] has not chosen to protect." *Pacheco v. Raytheon Co.*, 623 A.2d 464, 465 (R.I.1993). However, here, the position of chief of police is not terminable "at will" merely because it is for an indefinite term. Instead, this Court looks to mechanisms within the charter that clearly create and protect the rights of the chief of police and other town employees.

When confronted with statutory provisions that are in *pari materia*, this Court will "construe them in a manner that attempts to harmonize them and that is consistent with their general objective scope." *State v. Dearmas*, 841 A.2d 659, 666 (R.I.2004). Our process of statutory construction further involves a "practice of construing and applying apparently inconsistent statutory provisions in such a manner so as to avoid the inconsistency." *Montaquila*, 433 A.2d at 214. We undertake the same process when faced with charter provisions dealing with the same or similar issues. On the surface, charter sections 6–6(1) and 9–1(1) might appear to be inconsistent with each other, with section 6–6(1) limiting the removal power of the town administrator to situations in which cause exists, and section 9–1(1) providing for an indefinite term, traditionally associated with an "at-will position." However, section 9–1(1) clearly indicates that the chief of police is subject to removal by the town administrator in accordance with the provisions of the charter, namely, in accordance with the standard established in section 6–6(1).

We read section 6–6(1) as empowering the town administrator to remove town employees and officials only for cause, and,

in such instances, conferring upon the employee the right to specification of charges, notice, and a hearing. *See Davis,* 97 R.I. at 90, 196 A.2d at 156. Because town employees and officers are "entitled to a hearing whereat the appointing authority would be required to establish that the dismissal was based on substantial grounds[,]" *Aniello,* 91 R.I. at 207, 162 A.2d at 274–75, charter sections 14–10 and 14–11 of Article XIV provide the means for carrying out these entitlements. Charter section 14–10 governs the removal of officers on indefinite tenure, and provides that if an officer refuses the town administrator's request for his or her resignation, the town administrator may "prefer charges against said officer before the Town Council, requesting his removal." Section 14–10 requires that the officer be provided with notice of the hearing, a specification of said charges, and a hearing before the town council. The officer may be removed only on an affirmative vote by a majority of the council.

▇▇▇ The defendants concede that prior to the amendment of the charter, and the enactment of section 17–3(3), section 14–10 would have governed the removal of Chief Kells. However, section 17–3(3), which became effective on January 7, 2003,[6] provides that the term "officer" relates *only* to the town administrator, members of the town council, the town clerk, and the finance director. Further, Article XVII, section 17–3(3) provides that its definition of "officer" shall control wherever used in the charter. When the language of a statute, or, correspondingly a charter, is clear and unambiguous, we interpret the statute literally and give the words their plain and ordinary meaning. *State v. Badessa,* 869 A.2d 61, 65 (R.I.2005). Thus, applying the definition provided in sections 17–3(3) to

14–10, we interpret the phrase "officers appointed for an indefinite term" as excluding all employees who do not fall within the short list of positions enumerated in section 17–3(3). Thus, there is nothing that brings the chief of police under the umbrella of section 14–10.

Kells's exclusion from the protections afforded by section 14–10 does not, however, as defendants contend, leave him subject to the whims of the town administrator, nor does it eliminate the protections afforded him under the charter. Instead, because section 9–1 provides for the chief's removal by the town administrator in accordance with the provisions of the charter, and because section 6–6(1) establishes the town administrator's removal powers, there is no question that the chief of police is provided certain procedural protections afforded by section 6–6(1). Therefore, we look to section 14–11 as providing the appropriate means of removing the chief of police. That section provides that once any employee, except "those in the School Department working in administrative, supervisory or teaching capacity, and except those provided for otherwise in this Charter in § C14–10," has been dismissed, suspended, demoted, transferred, or laid-off "as provided herein," he or she may appeal in writing to the town council within ten days of the adverse employment action. The employee must be provided a hearing before the town council, whose ultimate decision is final and binding.

▇▇▇ The defendants, without conceding the applicability of section 14–11, have argued that if section 14–11 were to govern the chief's dismissal, Kells's right of appeal was waived because he failed to appeal to the town council within ten days of his termination. We reject this argu-

---

6. The date upon which Article XVII, section 17–3(3) became effective was agreed upon by the parties and listed in the "Agreed Statement of Facts."

ment. Once the temporary restraining order was issued on January 8, 2003, there was no need for Kells to appeal. The injunctive relief rendered the appellate procedure set forth in the charter inapplicable because the order restrained and enjoined the town administrator "from removing Chief Kells from his position as Chief of Police." For this reason, Kells's failure to appeal in writing within the ten days of his dismissal is not fatal to his cause.

## III

### Counsel Fees

The defendants next argue that the trial justice erroneously awarded Kells more than $23,000 in attorney's fees and costs. "It is well settled that attorneys' fees may not be appropriately awarded to the prevailing party absent contractual or statutory authorization." *Mello v. DaLomba*, 798 A.2d 405, 410 (R.I.2002) (quoting *Insurance Company of North America v. Kayser-Roth Corp.*, 770 A.2d 403, 419 (R.I.2001)). However, pursuant to § 9-1-45(1), attorney's fees may be awarded to the prevailing party in an action "arising from a breach of contract," in which the trial justice "[f]inds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party." The defendants contend that the present case neither arose out of a breach of contract nor lacked a justiciable issue of law or fact, and as such, attorney's fees were unavailable as a matter of law.

"A trial justice's award of attorney's fees is subject to review for abuse of discretion." *In re Estate of Cantore*, 814 A.2d 331, 334 (R.I.2003). "In conducting such a review, the discretion exercised by the trial justice must be reviewed 'in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law.'" *Id.* (quoting *Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.*, 763 A.2d 590, 598 (R.I.2000)). In this case, the hearing justice's award of counsel fees reflects his finding that Kells's contract was both valid and enforceable, and that because it incorporated the removal policy set forth in the charter, defendants' failure to adhere to that policy constituted breach of contract. It is axiomatic, the hearing justice stated, that parties to a contract operate in good faith, and defendants' failure to uphold their end of the contract violated that covenant of good faith. *See generally Dovenmuehle Mortgage, Inc. v. Antonelli*, 790 A.2d 1113, 1115 (R.I.2002) (" '[V]irtually every contract contains an implied covenant of good faith and fair dealing between the parties.' ")

Further, the hearing justice found that because the charter's removal policy clearly permits removal only for cause, defendants' concession that Kells was not removed for cause effectively ends the inquiry into whether there existed a justiciable issue. The hearing justice said "there was not a shred of evidence produced by the defendants that would in any way suggest any misconduct, wrongdoing or insubordination on the part of Chief Kells, and no attempt was made to make that suggestion." The mere fact that this Court conducted a statutory construction-based analysis of the charter does not create a justiciable question of law or fact. In fact, this Court's analysis of the hearing justice's decision reveals no abuse of discretion below, and we decline to disturb it. In particular, we give significant attention to "what is right and equitable under the circumstances and the law" and we do not overturn the hearing justice's finding that attorney's fees were warranted when the "town administrator

unlawfully arrogated to herself prerogatives that no fair reading of the charter gave to her." "As we have explicitly stated, we will reverse an award of attorney's fees only for an abuse of discretion." *Cantore*, 814 A.2d at 334. The Court is evenly divided on this issue. Therefore, the award on attorney's fees is affirmed.

## IV

### The Restraining Order

On May 27, 2004, the hearing justice ordered that:

"The Town Administrator is permanently restrained and enjoined from seeking to remove Chief Kells from office at this point in time. Nothing in this Order should be construed to bar her from seeking to remove him if the situation warrants and she follows the strictures of Section 14–10 of the Town Charter. Unless set forth specifically herein, the Town Administrator shall retain authority as set forth in the Town Charter."

In its appeal, the town did not seek a ruling from this Court regarding the propriety of the injunction issued on May 27, 2004. Even though we are confident in our opinion about the contractual and charter rights of the parties, we have grave reservations about whether the injunctive relief was proper in this case. However, we need not reach that issue because we agree that in light of our holding with respect to the plaintiff's rights under the charter, further injunctive relief is unnecessary at this time. The injunction issued by the hearing justice is hereby dissolved.

### Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, to which we return the papers in this case.

Justice GOLDBERG did not participate.

ROBINSON, J., with whom SUTTELL, J., joins, concurring in part and dissenting in part.

We are pleased to concur in the majority opinion to the extent that it interprets the charter provisions in a manner that would accord certain procedural protections to plaintiff if and when charges should be brought against him.[7] We must very respectfully dissent, however, from that portion of the Court's opinion which upholds the award of attorneys' fees to the plaintiff pursuant to G.L.1956 § 9–1–45.[8]

Pursuant to the "American Rule" (which is traditionally contrasted with the "English Rule"),[9] it has long been held that

---

7. We wish to add that, after studying the Court's opinion at some length, we finally came to perceive the correctness of its careful parsing of the rights that accrue to plaintiff by virtue of his contract and the charter of the Town of Lincoln. In view of several of the considerations discussed in such cases as *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), we question the *wisdom* of making it so relatively difficult for an incoming chief executive to remove an official as important as the chief of police. We realize, however, that passing upon the *wisdom* of charter provisions is not an appropriate judicial function.

8. General Laws 1956 § 9–1–45 provides:

"**Attorney's fees in breach of contract actions.**—The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:

(1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or

(2) Renders a default judgment against the losing party."

9. *See Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1147–48 (Fla.1985) (describing the nature and the genesis of both the "English Rule" and the "American Rule"); *see also Fogerty v. Fantasy, Inc.*, 510

"[a]ttorney's fees * * * are not ordinarily recoverable as an element of damages, in the absence of a statute or enforceable contractual provision providing for them." 22 Am.Jur.2d *Damages* § 430 at 384–85 (2003); *see also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) ("The rule * * * has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.").

Section 9–1–45, the statute relied upon by the Superior Court in this case constitutes a legislatively fashioned and carefully worded exception to the usual "American Rule," pursuant to which attorneys' fees are not normally awarded to prevailing parties. Under the terms of this statute, we do not think that there is any basis for an award of attorneys' fees—even if this were a contract action of the usual sort.[10]

We simply do not understand how it can be said that there was "a complete absence of a justiciable issue," which is an unequiv-ocal prerequisite that must be satisfied before the court may consider making a discretionary award of fees under the statute. *See UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 641 A.2d 75, 80 (R.I.1994) (reversing an award of fees under § 9–1–45, because "the question of whether the statute of frauds was satisfied presented a justiciable issue even though the evidence eventually proved to be legally deficient."); *see also Hemingway v. Hemingway*, 698 A.2d 228, 230 (R.I.1997); *Bucci v. Anthony*, 667 A.2d 1254, 1256 (R.I.1995).

It is clear to us that numerous legally trained minds have shed the mental equivalent of "blood, sweat and tears"[11] before concluding that the charter should be read as the Court reads it today. To our minds, this controversy constituted a virtual prototype of a "justiciable issue."[12] The issues before the Superior Court were complex and challenging—to be distinguished from (for example) a simple claim on book account when the defendant is obdurate. We continue to believe that this case was close and the "right result" was far from being intuitively obvious. In our judgments it is clear as a matter of law that there was not "a complete absence of a justiciable issue."[13]

U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

**10.** It is at least arguable that a claim alleging the existence of procedural rights under a municipal charter does not constitute a "civil action arising from a breach of contract," which is the only type of civil action to which § 9–1–45 applies. We concede, however, that entirely reasonable arguments can be made for the contrary proposition; and we do not base our dissent upon this issue.

**11.** Winston Churchill's actual words (in his first speech to the House of Commons as Prime Minister, on May 13, 1940) were: "I have nothing to offer but blood, toil, tears and sweat." John Bartlett, *Familiar Quotations* 743 (15th ed. 1980).

**12.** In *UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 641 A.2d 75 (R.I.1994), this Court vacated the Superior Court's award of over $100,000 in attorneys' fees, which award had been predicated upon § 9–1–45. This Court stated "We are of the opinion that the question of whether the statute of frauds was satisfied presented a justiciable issue *even though* the evidence eventually proved to be legally deficient." *Id* at 80. (Emphasis added.)

**13.** Even when there is "a complete absence of a justiciable issue," the trial justice still has discretion as to whether or not to award attorneys' fees. In our judgment, however, the question of whether or not there is a "complete absence of a justiciable issue" is

For these reasons, we do not believe that an award of attorneys' fees pursuant to § 9-1-45 was proper in this case, and we therefore respectfully dissent from that aspect of the Court's opinion.

inherently a question of law. Accordingly, unlike my colleagues, we have not scrutinized the trial justice's decision to award attorneys' fees under the abuse of discretion standard.