DECISION
Before this Court is an appeal from a unanimous decision of the Zoning Board of Review for the Town of South Kingstown (the Board) brought by Appellants Joseph T. Murphy and Jacqueline A. Murphy (collectively, the Appellants). They contend that the Board erroneously reversed a decision by Zoning Enforcement Officer/Building Official Russell W. Brown (Brown), declaring illegal the previous subdivision of a lot that abuts their property. Specifically, the Appellants assert that (1) the Board's factual findings were not supported by the record; (2) its decision was affected by error of law; and, (3) the Board erroneously determined that the property in question was a legally nonconforming buildable lot. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
In 1992, William E. Bassett (Bassett) owned a 9.53 acre parcel of land fronting Ministerial Road in the Town of South Kingstown, and otherwise known as Lot 45 on Tax Assessor's Map No. 61. See Letter from PlanningBoard dated December 3, 2004, and Plat Map. The property is located in an R-80 district. The Zoning Ordinance for the Town of South Kingstown (the Ordinance) requires that lots in R-80 districts be at least 80,000 square feet in size.
On October 20, 1992, Bassett subdivided the parcel into two lots by deed. See Plat Map and Warranty Deed dated October 20, 1992. One lot was deeded to Ministerial Realty, Inc. See id. The other lot was designated as Lot 64 on Tax Assessor's Map No. 61 (Lot 64). See Plat Map. Lot 64 consists of 4.35 acres and is the subject of this appeal. Seeid.
On June 24, 2004, Edward Timpson and Teresa A. Timpson (collectively, the Appellees or Timpsons) purchased Lot 64. See Warranty Deed dated June 24, 2004. On October 4, 2004, counsel for the Appellants sent a letter to Brown asserting that Lot 64 is not a buildable lot due to the existence of considerable wetlands on the property, and that as such, it "does not meet the dimensional requirements for developmental purposes."See Letter to Brown dated October 4, 2004, at 1.[1] The Appellants also expressed concern that in the event that Lot 64 actually is considered buildable, then the access road should be built in accordance with "current regulations and accepted road standards." Id. at 2.
Thereafter, Brown wrote to the Timpsons and informed them that Lot 64 "was and still is an illegal zoning lot when it was created by a deed. . . ." Letter from Brown dated February 8, 2005, at 1. After applying the Subdivision Regulations of the Town of South Kingstown (the Subdivision Regulations) to exclude the wetlands portion of the property from his calculation of land suitable for development, Brown concluded that Lot 64 does not meet the 80,000 square foot dimensional requirement for an R-80 district. Id. at 1-2. The Timpsons timely appealed Brown's decision to the Board.
At a duly noticed hearing on April 20, 2005, Brown testified that he believed that Lot 64 "was illegally created under the subdivision regulations" because the land was "unsuitable for development."Hearing Transcript dated April 20, 2005, at 13 (Tr. I). By his calculations, Lot 64 contains approximately only 30,000 to 40,000 square feet of dry, buildable land, rather than the required 80,000 square feet. Tr. at 22 and 25. Brown admitted that he did not know how much of the property consisted of wetlands when the subdivision was created in 1992. Id. at 32.
The Murphys next presented the testimony of an expert, Christopher Mason (Mason), president and principal scientist of an environmental consulting firm in Scituate, Rhode Island. Id. at 88. Mason testified that he was asked to examine Lot 64 to determine how much of it was wetlands in 1992. Id. at 92. His evaluation included viewing the property from the street, as well as reviewing government reports such as the Rhode Island Geographic Information System (GIS) Wetland Mapping and Soil Mapping. Id. at 92-93.
Mason testified that the Rhode Island Department of Agriculture conducted a soil survey to test the soil, and that it showed "a large portion of this site and the majority of the site as an Adrian muck-type soil." Id. at 93. He explained that Adrian muck-type soil
 "is a wetland soil, a hydric soil. It is categorically a wetland soil by the federal definition, and that extends over the entire site except for the southern portion, the last two or three hundred feet. . . . so the entire north portion of the site . . . is a wetland soil." Id.
Mason also testified that he reviewed Rhode Island GIS wetland mapping prepared from aerial photographs that were taken in 1988, and concluded that they showed the entire north portion of the site to be covered in wetlands. Id. at 94. He noted that the soil survey work was conducted in 1977 "by people in the field who walked the land, government officials who prepared those maps." Id. at 95. Mason then testified that "[t]he entire site based on the soil survey, the wetland mapping, my inspection of the site more recently, leads me to conclude that the entire area, that area shown on the ISDS plan, the entire area north of that is wetland and has been wetland since 1992." Id. at 96; see alsoLetter from Mason to Murphy dated April 14, 2005 (stating that "[t]he information reviewed provides a consistent picture of the site's wetlands as they occur now, and as they have occurred over the past fifteen years of more"). He further concluded that "approximately 4.3-4.5 acres of wetland existed on this lot in 1992 and carrying forward to today." Id. at 100-01. After Mason concluded his testimony, the Board adjourned the matter until June 22, 2005. Id. at 117.
When the Board reconvened on June 22, 2005, Brown was recalled as a witness. Hearing Transcript dated June 22, 2005 at 7 (Tr. II). Brown testified that the only legal provision that he considered in reaching his decision was Section II (o) of the Subdivision Regulations pertaining to land unsuitable for development. Id. at 13. After closing arguments, the hearing was closed, and the matter was taken under advisement. Id. at 31. On July 20, 2005, the Board unanimously voted to reverse Brown's decision. Hearing Transcript dated July 20, 2005. A written Decision from the Board was entered into the land evidence records on July 21, 2005. See Decision of the Board (the Decision).
In its Decision, the Board found that based upon the evidence presented, it could not "conclusively
determine . . . whether or not there was in fact 80,000 square feet of land suitable for Development on the lot at the time of its creation in October of 1992." Decision at 2. The Board also found that Brown was clearly erroneous when he retrospectively applied the Subdivision Regulations because the Ordinance did not require such an application.Id. The Board further found that Lot 64 met the literal requirements of the Ordinance, because it had "a lot area of much more than the required 80,000 square feet." Id. The Board concluded that Lot 64 is a buildable, legal nonconforming lot of record for single residential purposes.Id. at 3. Thereafter, the Appellants timely appealed the Board's decision to this Court.
 Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d).
Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether 'substantial' evidence exists to support the board's findings." Salve Regina College v. ZoningBd. of Review of City of Newport, 594 A.2d 878, 880 (R.I. 1991) (quotingDeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979)). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. ofReview of North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)).
In conducting its review, the trial justice "may 'not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. Church Community HousingCorp., 672 A.2d 453, 454 (R.I. 1996) (quoting § 45-24-69(d)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. of Review of East Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962). Nevertheless, an administrative decision may be vacated if it is clearly erroneous in view of the reliable, probative and substantial evidence contained in the whole record. Von Bernuth v. Zoning Bd. of Review of Town of NewShoreham, 770 A.2d 396, 399 (R.I. 2001); see also Costa v. Registrar ofMotor Vehicles, 543 A.2d 1307 (R.I. 1988); § 45-24-69(d)(5).
 Analysis
This Court finds that the Appellants have standing to file this appeal pursuant to the provisions of § 45-24-69(a). The Town's suggestion that the Appellants do not have standing must fail as a matter of law. Section 45-24-69(a) provides in pertinent part:
 "An aggrieved party may appeal a decision of the zoning board of review to the superior court for the county in which the city or town is situated by filing a complaint stating the reasons of appeal within twenty (20) days after the decision has been recorded and posted in the office of the city or town clerk."
An aggrieved party is defined as:
 "(i) Any person or persons or entity or entities who can demonstrate that their property will be injured by a decision of any officer or agency responsible for administering the zoning ordinance of a city or town; or
 (ii) Anyone requiring notice pursuant to this chapter." Section 45-24-31(4) (emphasis added).
Considering that the Murphys live within 200 feet of Lot 64, they were entitled to notice. See 45-24-53(2) ("Written notice of the date, time, and place of the public hearing and the nature and purpose of the hearing shall be sent to all owners of real property whose property is located in or within not less than two hundred feet (200') of the perimeter of the area proposed for change. . . .") Consequently, the Appellants are aggrieved parties and have standing to file this appeal.
In his decision, Brown cited to G.L. 1956 § 45-23-1 to find that Lot 64 "requires an area at least equal to the subdivision regulations and/or a Zoning Ordinance whichever is greater."[2] He then considered the language of Section II (o) of the Subdivision Regulations and concluded that Lot 64 did "not have 80,000 square feet of land that is suitable for development and thus the subdivision fails to qualify for an exemption from the subdivision regulations on October 20, 1992."[3]
The Board initially reached a legal conclusion that the Building Official's "retrospective application of the Subdivision Regulations of 1992 . . . is clearly erroneous." In other words, the Board ruled that because Lot 64 was in conformity with the dimensional requirements of Section 205A of the Zoning Ordinance as adopted in 1999,[4] it was error for the Building Official to apply the provisions of Section II (o) of the 1977 Subdivision Regulations, as amended through 1992, which required exclusion of wetlands from the area suitable for development. Thus, the Board overturned the Building Official's finding that Lot 64 was an illegal zoning lot when it was created in 1992. Instead, the Board determined that Lot 64 was a legal non-conforming lot of record as defined in Section 205A of the Zoning Ordinance, and that the Zoning Ordinance in effect in 1992 did not require the lot to conform to the then existing Subdivision Regulations of the Town. In addition, the Board determined as a factual matter that the Murphys failed to present sufficient evidence to find that the wetlands on the Timpson property rendered the lot size less than 80,000 square feet at the time it was created in 1992, even if the Subdivision Regulation excluding wetlands were to be applied.
This Court concludes that the Board made clear error of law in its refusal to consider the Subdivision Regulations in existence at the time of the creation of Lot 64. Furthermore, this Court determines that the Board's decision is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.
While the "factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation is a question of law. . . ." Rossi v. Employees' Retirement System,895 A.2d 106, 110 (R.I. 2006). It is well settled that "the rules of statutory interpretation apply equally to the construction of an ordinance."Mongony v. Bevilaqua, 432 A.2d 661, 663 (R.I. 1981) In this Court'sde novo review, a zoning board's determinations of law, like those of an administrative agency's, "are not binding on the reviewing court; they `may be reviewed to determine what the law is and its applicability to the facts.'" Gott v. Norberg, 417 A.2d 1352, 1361 (R.I. 1980) (quotingNarragansett Wire Co. v. Norberg, 118 R.I. 596, 376 A.2d 1, 6 (1977)).
In its Decision, the Board found
 "that there was no indication in the Zoning Ordinance at the time [Lot 64 was created] that the subdivision of a parcel of land had to conform to the Subdivision and Land Development Regulations of the Town. Such a provision was added to the Zoning Ordinance by the Town Council on March 3, 1993 . . . Therefore, the Zoning Board finds that Lot 64 met the literal requirements of the Zoning Ordinance in 1992 with a lot area of much more than the required 80,000 square feet."
At all times pertinent to this appeal, Lot 64 has been located in an R-80 district. R-80 districts require lots to be at least 80,000 square feet in size. At the time that Lot 64 was created, the 1976 Ordinance, as amended, was in effect. Said Ordinance was silent about whether wetlands should be excluded when calculating the necessary square footage for a lot to be legal. At the time, however, Section II (o) of the Subdivision Regulations provided in pertinent part: "Wetlands . . . may not be considered as part of the land area required per lot in a subdivision."
The Appellees contend that the Planning Board exceeded its authority when it enacted Section II (o) because, it asserts, only the Town Council had the authority to regulate the size of a lot. They contend that it was not until March 3, 1993, when the Ordinance was amended to require conformity with the Subdivision Regulations, that Section II (o) lawfully could have been considered in calculations of lot size.[5] In support of this assertion, the Appellees maintain that had the Town Council wished to exclude wetlands from lot-size calculations, it easily could have done so, as evidenced by the fact that the Ordinance specifically excluded wetlands as unsuitable for the development of Residential and Rural Low Density Cluster Developments. See Sections 250 and 260 of the Ordinance.[6]
Chapter 23 of title 45 of the Rhode Island General Laws governs the subdivision of land in Rhode Island. It delegates to city or town councils the authority to give planning boards the authority to create and administer subdivision regulations. At the time that Lot 64 was created, the 1991 Reenactment of the Subdivision of Land Act was in effect. General Laws 1956 § 45-23-2 provided in pertinent part:
 "the town council of any town shall have the power, in accordance with the provisions of this chapter, within the limits of the . . . town by ordinance to authorize and empower the plan commission to adopt, modify, and amend rules and regulations governing and restricting the platting or other subdivision of land in the . . . town, and to control the subdivision of land pursuant to those regulations."
The Act mandated that "[t]he rules and regulations shall be designed . . . to promote safety from . . . flood, and other dangers; . . . to secure adequate drainage and the provision of erosion controls to mitigate stormwater runoff; . . . [and] to conserve natural beauty and other natural resources. . . ." Section 45-23-3. The Act further required that
 "[i]n construing the provisions of this chapter and any ordinance passed hereunder, all courts shall consider the same most favorably to the plan commission, it being the intent hereof to give to the plan commission the fullest and most complete powers possible concerning the matters provided for herein." Section 45-23-21.
It is clear from the foregoing that the General Assembly, in exercising its police powers, delegated to planning boards the latitude necessary to carry out the legislative intent of the statute, which essentially is the orderly and safe development of cities and towns, as well as protection of the environment. See Munroe v. Town of EastGreenwich, 733 A.2d 703, 710 (R.I. 1999) ("Zoning, land development and subdivision regulations constitute a valid exercise of police power, and are matters of statewide concern.") Accordingly, this Court concludes that the Planning Board had clear statutory authority to enact Section II (o) of the Subdivision Regulations pursuant to chapter 23 of title 45, and that such authority is consistent with the broad legislative mandate explicit in the statute.[7]
Even if the subdivision regulation in effect at the time of the creation of Lot 64 were considered more restrictive than the then prevailing zoning ordinance, the ordinance itself provided guidance as to which standard to apply. The 1976 Zoning Ordinance provided:
 "In their interpretation and application, the provisions of this Zoning Ordinance shall be construed to be minimum requirements for the promotion of the public health, safety, morals and general welfare. Wherever the requirements of this Ordinance are at variance with the requirements of any other lawfully adopted rules, regulations, ordinances, deed restrictions or covenants, the more restrictive or those imposing the higher standards, shall govern." Section 1904 of the Ordinance. (Emphases added.)
As the more restrictive standard, Section II (o) of the Subdivision Regulations should be applied to the calculation of lot size.
It also appears that Section II (o) and the Ordinance can be readin pari materia. See Kells v. Town of Lincoln, 874 A.2d 204, 212 (R.I. 2005) ("When confronted with statutory provisions that are in parimateria, this Court will `construe them in a manner that attempts to harmonize them and that is consistent with their general objective scope.'") (quoting State v. Dearmas, 841 A.2d 659, 666 (R.I. 2004));see also DelSanto v. Hyundai Motor Finance Co., 882 A.2d 561, 562 n. 2 (R.I. 2005) ("It is a fundamental principle of statutory interpretation that every effort is to be made to harmonize statutes.") Thus, "[w]here there are two acts upon the same subject, effect should be given to both if possible." Kells, 874 A.2d at 212. It also should be remembered that "[t]his Court will not construe a statute to reach an absurd result."State v. Flores, 714 A.2d 581, 583 (R.I. 1998) (quoting Kaya v.Partington, 681 A.2d 256, 261 (R.I. 1996)).
Considering that the Subdivision Regulations and the Ordinance both constitute a valid exercise of police power, and considering that they both concern matters of statewide concern (see Munroe, 733 A.2d at 710), this Court concludes that Section II (o) of the Subdivision Regulations is neither inconsistent with, nor in derogation of the Ordinance.See Retirement Bd. of Employees' Retirement System of State v.DiPrete, 845 A.2d 270, 297 (R.I. 2004) (reiterating that where the language of a statute or ordinance "is clear on its face, then the plain meaning of the statute [or ordinance] must be given effect and this Court should not look elsewhere to discern the legislative intent") (internal quotations omitted). Indeed, were this Court to find that wetlands should be included in calculations of lot size, as suggested by the Appellees, it could lead to an absurd situation where a lot that is entirely covered in wetlands nevertheless may be considered a legally conforming buildable lot. Consequently, the Board's finding that Brown improperly applied Section II (o) of the Subdivision Regulations was clearly erroneous.
It is undisputed that the original parcel was located in an R-80 district when the Timpsons' predecessor in title created Lot 64. Having determined that the Board should have excluded the wetland portion of Lot 64 from the calculation of lot size, this Court next must determine whether there was insufficient evidence for the Board to "conclusively determine . . . whether or not there was in fact 80,000 square feet of land suitable for Development on [Lot 64] . . . in October of 1992."Decision at 2. This Court concludes that undisputed expert evidence existed in the record for the Board to make such a determination.
A zoning board may reject the testimony of an expert if there is substantial contrary evidence. See Restivo v. Lynch, 707 A.2d 663, 671
(R.I. 1998) (holding that "there is no talismanic significance to expert testimony. It may be accepted or rejected by the trier of fact[,]" especially if there is persuasive opposing testimony). Nevertheless, where there is no opposing expert testimony or evidence in the record adverse to the Appellants, the zoning board must accept that testimony as undisputed, unless the board can demonstrate that it relied upon its own special knowledge. See Salve Regina College, 594 A.2d at 882 andDeStefano, 122 R.I. at 247, 405 A.2d at 1171. If a board reaches a decision allegedly based upon its special knowledge, it "will not be upheld . . . unless the record reveals the underlying facts or circumstances the board derived from its knowledge of the area."Id.
In the instant matter, the Appellants presented undisputed expert testimony concerning the extent of the wetlands on Lot 64 when it was created in 1992.[8] Mason testified that in calculating how much wetlands existed on Lot 64 in 1992, he studied the "existing information that's available through several government sources," such as the GIS wetland mapping and soils mapping. Id. at 92-93. The soil survey revealed that the majority of the property was covered in "Adrian muck-type soils." Id. at 93. He testified that such soils constitute "wetland soil by the federal definition." Id. Mason also studied GIS aerial photographs taken in 1988. Id. at 93-94. Mason then opined that apart from the "very southern portion, the last two or 300 feet," the entire lot "north of that is wetland and has been wetland since 1992."
Despite Mason's undisputed expert testimony and his expert conclusion concerning how much of the property was wetlands in 1992, the Board rejected Mason's opinion. As there is nothing in the decision or the record indicating that the Board had any special knowledge of the property, it appears that it just assumed that Lot 64 satisfied the 80,000 square-foot requirement. However, considering that there absolutely was no opposing expert testimony or evidence in the record to challenge Mason's expert opinion, the Board was required to accept his opinion and conclude that Lot 64 did not satisfy the 80,000 square-foot requirement in 1992. Accordingly, the Board's failure to accept Mason's undisputed expert opinion renders its decision with regard to wetlands on the site as of 1992 clearly erroneous in view of the reliable, probative, and substantial evidence, as well as an abuse of discretion.
In view of the fact that Lot 64 did not satisfy the 80,000 lot-size requirement at the time of its creation, it does not constitute a legally non-conforming lot of record; rather, it actually is an illegal, nonconforming lot of record. That is because Lot 64 has never been "in compliance with the dimensional regulations of the zoning ordinance." Sec. 45-24-31(49)(ii).
The Appellees suggest that Lot 64 nevertheless is buildable because it satisfies Section 205A of the current Ordinance.[9] In its Decision, the Board agreed, finding "that Section 205A of the South Kingstown Ordinance, as adopted May 10, 1999 titled: `Single Nonconforming Recorded Lots — When Buildable' satisfactorily addresses the current situation." Decision at 3.[10] It then found (1) "that at the time of recording of Lot 64 it conformed in all respects to `the minimum requirements of the Zoning Ordinance in effect at that time[;]'" (2) that it was a "legally non-conforming lot of record[;]" and, (3) "did not abut other land of the same owner" when it was created.Id. It then concluded that "Lot 64 shall be considered buildable for single household residential purposes pursuant to Section 205A of the current Zoning Ordinance." Id.
These findings constituted an error of law. This Court's decision is in accord with that of the Building Official that Lot 64 was an illegal nonconforming lot when it was created. Consequently, it did not conform with the minimum requirements in effect at that time.
 Conclusion
After a careful review of the entire record, it is apparent that the Zoning Board's reversal of Brown's conclusion that Lot 64 was an illegal, nonconforming lot constituted an abuse of discretion, was affected by error of law, and was clearly erroneous. The Zoning Board's reversal of Brown's Decision was unsupported by the reliable, probative, and substantial evidence of the whole record, and substantial rights of the Appellants have been prejudiced. Accordingly, this Court reverses the Zoning Board's Decision.
Counsel shall submit an appropriate form of order consistent with this decision.
[1] Apparently, an ISDS plan for a four-bedroom house was approved by the Rhode Island Department of Environmental Management in 2004.
[2] Section 45-23-1 of the Enabling Act provides:
 "Division of a lot . . . shall not be subject to the provisions of this chapter if each lot . . . resulting from the division meets all of the following conditions:
 (A) An area and dimension at least equal to that required by the subdivision regulations and/or zoning ordinance applicable to all land, whichever is greater;
 (B) Frontage on an existing street which has been dedicated to the public and accepted by the city or town having jurisdiction, provided the frontage meets the minimum requirements of front lot lines according to zoning or subdivision regulations;
 (C) Frontage at the minimum setback or building line which is not less than seventy-five percent (75%) of that required at the front lot line or street line by the zoning ordinance and/or subdivision regulations applicable to the land, whichever is greater; and
 (D) Provision is made for access to any area isolated from frontage on an existing public street by the division, by reservation of outlots or designation of a mapped street as provided for by chapter 23.1 of title 45."
At the hearing, the Appellants asserted that Lot 64 did not satisfy G.L. 1956 §§ 45-23-1 (A), (C) and (D). In their appeal, they address only § 45-23-1 (A); consequently, the remaining assertions are not before this Court.
[3] Section II (o) of the Subdivision Regulations provided in pertinent part: "Wetlands . . . may not be considered as part of the land area required per lot in a subdivision."
[4] According to Section 205A of the current Ordinance, a lot that is nonconforming by area or width may be buildable if it was (1) recorded prior to the effective date of the Ordinance; (2) in conformance with the minimum requirements of the Ordinance in effect when it was created; and, (3) separated from any other land owned by the same person.See Section 205A.
[5] The following language was added to the Ordinance on March 3, 1993: "No lot or parcel of land shall be subdivided except in conformity with this Ordinance and with the Subdivision and Land Development Regulations of the Town of South Kingston. . . ." Section 250 A.1. of the Ordinance.
[6] Sections 250 and 260 of the Ordinance both require that "[l]and which is unsuitable for development, as hereinafter defined, shall first be deducted from the tract proposed for development." Section 250 (2)(b)(i) and Section 260(2)(a). Both provisions then define wetlands as being land that is unsuitable for development. See Section 250 (3)(a) and Section 260(3)(a).
[7] It is undisputed that the Planning Board followed all of the procedural requirements necessary to lawfully enact Section II (o) of the Subdivision Regulations; the Appellees in this case merely challenged the authority of the Planning Board to regulate lot size.
[8] The Board recognized Mason as an expert after he testified that he is certified by the National Society of Wetlands Scientists (Tr. I at 89); is registered by the Rhode Island Association of Wetlands Scientists (id); has an undergraduate degree in botany and ecology (id.); a graduate degree in planning, particularly in the area of environmental planning (id.); and, has "done work for U.S. EPA, Army Corps of Engineers, Rhode Island DOT, Rhode Island DEM, and a number of other towns and cities in Rhode Island" (id. at 90).
[9] The Appellees appear to be contending that any nonconforming lot of record that satisfies Section 205A would be buildable regardless of whether or not its nonconformance pre-existed the Ordinance. This would lead to an absurd result because it would directly contravene the purpose of the Ordinance itself, as well as various environmental and land use statutes. See RICO Corp. v. Town of Exeter, 787 A.2d 1136, 1145
(R.I. 2001) (observing that nonconformance is "necessarily inconsistent with the land-use pattern established by an existing zoning scheme"). Consequently, this particular appellate assertion must fail.
[10] See note 6, supra..