May 10, 2017

**Supreme Court**

No. 2015-276-Appeal.
(NC 12-184)
No. 2015-277-Appeal.
(NC 12-261)

Marcia Sallum Glassie          :

v.                             :

Paul Doucette, in his capacity as Executor of   :
    the Estate of Donelson C. Glassie, Jr.     :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2015-276-Appeal.
(NC 12-184)
No. 2015-277-Appeal.
(NC 12-261)

Marcia Sallum Glassie                    :

v.                    :

Paul Doucette, in his capacity as Executor of    :
   the Estate of Donelson C. Glassie, Jr.    :

Present:  Suttell, C.J., Goldberg, Robinson, Flaherty, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  The plaintiff, Marcia Sallum Glassie, and the

defendant, Paul Doucette, the Executor of the Estate of Donelson C. Glassie, Jr., cross-appeal

from a Superior Court judgment awarding the plaintiff the sum of $2,000,000 under the

provisions of the last Will and Testament of Donelson C. Glassie, Jr. (testator), less $437,861.59

in life insurance proceeds.  In addition, the defendant also appeals from the trial justice's award

of attorney's fees to the plaintiff, and the plaintiff appeals from the trial justice's denial of

prejudgment interest.  For the reasons set forth in this opinion, we vacate the judgment of the

Superior Court and remand the matter for further proceedings.

**I**

**Facts and Travel**

The plaintiff married testator on February 14, 1986; three children were born during their

marriage.  The marriage dissolved and on July 1, 1993, testator and plaintiff entered into a

property-settlement agreement (the agreement).  Under the terms of the agreement, testator

undertook a number of financial obligations.  As security, testator covenanted to execute an

irrevocable will within forty-five days of signing the agreement to "provide that all of the

- 1 -

obligations under th[e] [a]greement * * * shall be a claim against any assets in [testator's] [e]state" and to "specifically bequest to [plaintiff] an amount equal to said obligations." The agreement further provided that "[t]he obligation of [testator] to maintain said assets and to bequest said sum to [plaintiff] shall be subject to modification by the Family Court from time-to-time as the obligations of [testator] diminish under th[e] [a]greement."

Thereafter, testator executed a will in December 1993. In an affidavit submitted to the Superior Court, plaintiff maintained that she had objected to certain language in the will, contending that the will failed to provide her a sum certain bequest as required under the agreement.

On October 16, 1997, a hearing was held in Family Court to determine whether the 1993 will was in compliance with the agreement. In a bench decision, a Family Court justice determined that "[plaintiff] [was], indeed, entitled * * * to the bequest of a sum certain equal to [testator's] obligations." The justice also noted that it was "clearly anticipated" in the agreement that testator's "obligations [would] change periodically and, hence, require repeated trips to [the] Family Court for modification." An order embodying the Family Court's decision was subsequently entered, from which testator timely appealed to this Court.

On March 20, 1998, testator executed a subsequent will. Thereafter, he executed a codicil to this will,[1] dated June 1998, the twelfth provision of this will provided, in pertinent part, that:

> "TWELFTH: I give, devise and bequeath to my former spouse, Marcia S. Glassie, * * * the sum of $2,000,000.00, or such other amount as shall be then required to fully satisfy all of my remaining obligations and responsibilities pursuant to the terms and provisions of that certain Property Settlement Agreement dated

---

[1] The codicil was executed per an order of the Family Court requiring that certain language be stricken from the March 20, 1998, will in order for it to comply with the terms of the agreement.

July 1, 1993, entered into between my former spouse, Marcia S. Glassie, and me, as the same may be amended from time to time. To the extent such obligations and responsibilities remain executory, they shall survive my death, and shall be binding upon and constitute a charge upon my estate."

Thereafter, the case was remanded to the Family Court for further proceedings.[2]

On August 4, 1998, plaintiff and testator stipulated in the Family Court that the will dated March 20, 1998, as amended by the codicil dated June 1998, was in "full compliance" with the agreement. A stipulation (1998 stipulation), signed by the Family Court justice, entered, further indicating that the obligation of testator to make a specific monetary bequest as required "shall only be subject to modification by the Family Court or by agreement of the parties."[3] A final will was subsequently executed on July 16, 1999 (1999 will), in which testator incorporated the language of the twelfth provision of the June 1998 codicil amending the March 20, 1998, will bequeathing to plaintiff "$2,000,000.00, or such other amount as shall be then required to fully satisfy all of [his] remaining obligations and responsibilities * * *."[4]

The testator passed away on February 3, 2011. After his death, the will was properly admitted to probate in the City of Newport. It is undisputed that testator had never returned to Family Court in an attempt to seek permission to alter or otherwise modify the language of the will during the thirteen years after entry of the 1998 stipulation.

On May 3, 2012, plaintiff filed a claim against testator's estate for $2,000,000. The defendant, citing to G.L. 1956 § 33-11-14,[5] disallowed the claim on May 11, 2012.

---

[2] According to counsel representing testator at that time, "the parties agreed to request the Supreme Court to remand the case back to the Family Court for further proceedings so that the parties could * * * resolve the pending litigation * * *."

[3] Docket No. 1998-33-Appeal indicates that the appeal was withdrawn per the entering of the stipulation on August 20, 1998.

[4] This bequest is incorporated in the fourteenth provision of the 1999 will.

[5] General Laws 1956 § 33-11-14, "Disallowance of claim," provides that:

The plaintiff also filed a complaint in the Superior Court on May 4, 2012, requesting that the court construe testator's will and declare that she is entitled to the bequest of $2,000,000, in addition to "interest from the date such bequest should have been paid, plus reasonable attorney's fees." On June 25, 2012, plaintiff filed a separate complaint in the Superior Court against testator's estate challenging defendant's disallowance and requesting "judgment on her disallowed claim in the amount of $2,000,000 plus interest from the date such bequest should have been paid, plus reasonable attorney's fees." Eventually, the matter was heard on the parties' cross-motions for summary judgment.

At the hearing, plaintiff argued that "the only reasonable inference that one [could] draw" from testator's failure to return to Family Court was that testator had no desire to modify the $2,000,000 bequest in the will. The defendant, on the other hand, averred that the bequest was similar to an insurance policy, arguing that, in the event that testator's obligations were not met before his death, the monies would be expended to fulfill all obligations remaining on the agreement.

The hearing justice granted summary judgment to plaintiff. The extent of his decision is as follows:

> "If I looked at this as a contract and there's any ambiguity in the contract I would look at it as the person drafting the contract. In this particular situation, [testator] is the one with the experience.

---

"Any claim presented within six (6) months from the first publication may be disallowed in full or in part, within six (6) months and thirty (30) days from the first publication by the personal representative, or by any interested party, by filing in the office of the clerk of the probate court a statement disallowing the claim, and giving notice in writing, either personally or by registered or certified mail, to the claimant, whose claim is disallowed; and any claim presented after six (6) months from the first publication may be disallowed in full or in part, within thirty (30) days after presentation."

He appeared before the Family Court at least five times between 1993 and 1998. The $2 million dollars in his mind would be a dot over the 'i' compared to what we may think is a lot of money."

Unexpectedly, the hearing justice then reduced the $2,000,000 by the proceeds of a life insurance policy that plaintiff had received upon the death of testator, ultimately "grant[ing] summary judgment to * * * plaintiff in the amount of $1,550,000."[6] The hearing justice then scheduled another hearing to discuss attorney's fees and prejudgment interest.

The parties reconvened before the hearing justice on March 10, 2015, at which time plaintiff sought prejudgment interest in the amount of "$656,000" and attorney's fees in the amount of $42,440.55. The hearing justice denied plaintiff's request for prejudgment interest, but ultimately awarded her the full requested amount of attorney's fees. Final judgment in both cases pursuant to Rule 54(b)[7] of the Superior Court Rules of Civil Procedure entered on March 30, 2015, awarding plaintiff $2,000,000 "pursuant to the [1998 will], less $437,861.59 in life insurance proceeds from an insurance policy on the life of [testator], for a net award of $1,562,138.41." In addition, the trial justice awarded plaintiff attorney's fees of $42,440.55, denied plaintiff's motion for prejudgment interest, and denied defendant's motion for summary judgment. The parties cross-appealed from the final judgment.

---

[6] Final judgment entered for $1,562,138.41.

[7] Rule 54(b) of the Superior Court Rules of Civil Procedure provides, in pertinent part, that:
> "When more than one (1) claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one (1) or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

## II

### Standard of Review

"This Court examines an appeal from cross-motions for summary judgment de novo." 5750 Post Road Medical Offices, LLC v. East Greenwich Fire District, 138 A.3d 163, 166 (R.I. 2016) (quoting Medical Malpractice Joint Underwriting Association of Rhode Island v. Charlesgate Nursing Center, L.P., 115 A.3d 998, 1002 (R.I. 2015)). "In reviewing the Superior Court's judgment on the parties' motions for summary judgment, we * * * apply the same standards as those used by the trial court." Id. (quoting Medical Malpractice Joint Underwriting Association of Rhode Island, 115 A.3d at 1002). "Thus, [s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the [C]ourt determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Id. at 166-67 (quoting Medical Malpractice Joint Underwriting Association of Rhode Island, 115 A.3d at 1002).

## III

### Issues on Appeal

The defendant argues on appeal that the hearing justice erred in awarding plaintiff a specific bequest under the will. He points to the operative language in the will whereby testator bequeathed to plaintiff "the sum of $2 million or such other amount as shall be then required to fully satisfy all of [testator's] remaining obligations and responsibilities" under the agreement. According to defendant, it was undisputed that testator had no outstanding obligations under the agreement at the time of his death, and the use of the disjunctive "or" unambiguously evinces testator's intent that plaintiff not receive the $2,000,000 bequest under such circumstances. In the alternative, defendant contends that, in the event the provision is deemed to be ambiguous,

accepted rules of will construction and the circumstances attendant to the will's execution mandate a like result.  In addition, defendant argues that the Superior Court had no authority to award attorney's fees.

In response, plaintiff contends that the Family Court's "final consent order" entered on August 4, 1998, bars defendant from relitigating issues concerning testator's intent to make a specific bequest to plaintiff under the principles of <u>res judicata</u> and collateral estoppel. According to plaintiff, the Family Court justice clearly determined that plaintiff would be entitled to a specific amount set forth in the will unless testator petitioned the Family Court to reduce the amount.  She further argues that the hearing justice erred in reducing the amount of the bequest by the proceeds of a life insurance policy and that she is entitled to prejudgment interest on the amount of the bequest.

**IV**

**Discussion**

**A**

**Construction of Will**

We need not engage in an exhaustive analysis of the issues raised in this appeal, because it is our opinion that summary judgment was inappropriately granted.  It would appear that the hearing justice found the disputed provision in the will to be ambiguous and then interpreted it against testator as the drafter of the will.  When construing the language in a will, however, the primary objective "is to ascertain and effectuate the intent of the testator * * * as long as that intent is not contrary to law." <u>Lazarus v. Sherman</u>, 10 A.3d 456, 462 (R.I. 2011) (quoting <u>Steinhof v. Murphy</u>, 991 A.2d 1028, 1033 (R.I. 2010)).

"This [C]ourt has stated many times in effect that each will must be considered in the light of its particular language and the circumstances surrounding its making." Rhode Island Hospital Trust Co. v. Thomas, 73 R.I. 277, 281, 54 A.2d 432, 434 (1947). "The only rule of universal and uniform application in the construction of wills is the fundamental rule that the testator's intent, as expressed in the will, is to be ascertained and, if not contrary to law, is to be given effect so far as possible." Id. "Where the testator's intent is doubtful or obscure other rules of construction have been recognized; but they are not to be confused with or applied as rules of positive law." Id. "Rules of construction are applied in order to ascertain and effectuate the intent of the testator and not to defeat it." Id. at 281, 54 A.2d at 434-35.

We agree with the hearing justice that the disputed provision in the will is ambiguous. It provides for a bequest to plaintiff in the disjunctive:

> "the sum of $2,000,000.00, or such other amount as shall be then required to fully satisfy all of [testator's] remaining obligations and responsibilities pursuant to the terms and provisions of * * * [the agreement] * * * as the same may be amended from time to time. To the extent such obligations and responsibilities remain[ed] executory, they shall survive [testator's] death, and shall be binding upon and constitute a charge upon my estate." (Emphasis added.)

The will, however, does not clearly specify under what circumstances plaintiff is to receive the sum of $2,000,000 or the circumstances under which she is to receive such other amount necessary to satisfy all of his remaining obligations. This lack of clarity is particularly troublesome in light of defendant's assertion that all of testator's obligations under the agreement were fully satisfied at the time of his death. We are convinced that a proper resolution of this matter requires factfinding and conclusions of law with respect to testator's intent.

**B**

**Res Judicata/Collateral Estoppel**

We also reject plaintiff's notion that the 1998 stipulation entered in the Family Court controls the outcome of this case in accordance with the principles of res judicata and collateral estoppel. We review res judicata claims de novo. See Wright v. Zielinski, 824 A.2d 494, 497 (R.I. 2003).

"Res judicata 'makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or, that could have been presented and litigated therein.'" Ritter v. Mantissa Investment Corp., 864 A.2d 601, 605 (R.I. 2005) (quoting ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996)). Accordingly, "[r]es judicata will extinguish a plaintiff's claim against a defendant even though the plaintiff would be prepared to present evidence or theories of the case not presented in a previous action." Wright, 824 A.2d at 497. Thus, "[r]es judicata serves as an 'absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.'" In re Sherman, 565 A.2d 870, 872 (R.I. 1989) (quoting Beirne v. Barone, 529 A.2d 154, 157 (R.I. 1987)).

The parameters of res judicata are determined by a "broad 'transactional' rule." Ritter, 864 A.2d at 605 (quoting ElGabri, 681 A.2d at 276). In effect, the "rule precludes the re-litigation of 'all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.'" Id. (quoting ElGabri, 681 A.2d at 276). "What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations * * *." Ritter, 864 A.2d at 605 (quoting

ElGabri, 681 A.2d at 276).

Based upon our review of the record, we conclude that res judicata does not apply

because there is no identity of issues. Here, the Family Court justice was tasked with

interpreting the agreement that plaintiff and testator had executed in conjunction with their

divorce, to determine whether or not the latter's will complied with the agreement's requirements

that testator's obligations remaining executory at the time of his death would be fulfilled, and

that plaintiff be provided a sum certain bequest under the will to ensure the payment of such

financial obligations. The Family Court justice did not purport to ascertain testator's

testamentary intent in the event that he fully satisfied his obligations under the agreement before

his death—nor could she. "The Family Court is a statutory court of special jurisdiction. Its

jurisdiction is expressly defined in [G.L. 1956 §] 8-10-3."[8] Concannon v. Concannon, 116 R.I.

---

[8] General Laws 1956 § 8-10-3(a) provides, in relevant part, that:

> "There is hereby established a family court, consisting of a chief judge and eleven (11) associate justices, to hear and determine all petitions for divorce from the bond of marriage and from bed and board; all motions for allowance, alimony, support and custody of children, allowance of counsel and witness fees, and other matters arising out of petitions and motions relative to real and personal property in aid thereof, including, but not limited to, partitions, accountings, receiverships, sequestration of assets, resulting and constructive trust, impressions of trust, and such other equitable matters arising out of the family relationship, wherein jurisdiction is acquired by the court by the filing of petitions for divorce, * * * modification of any order or decree granting alimony and/or custody and/or visitation of any court of competent jurisdiction of another state on the ground that there has been a change of circumstances; modification of any order or decree granting child support of any court of competent jurisdiction of another state provided: (1) the order has been registered in Rhode Island for the purposes of modification * * * or (2) Rhode Island issued the order and has continuing exclusive jurisdiction over the parties; antenuptial agreements, property

- 10 -

323, 328, 356 A.2d 487, 491 (1976). We discern no language in said section that signifies an intent by the General Assembly to authorize the Family Court to construe or enforce testamentary documents.

"The doctrine of collateral estoppel makes conclusive in a later action on a different claim the determination of issues that were actually litigated in a prior action." E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey, 635 A.2d 1181, 1186 (R.I. 1994). For the reason that the issue of testator's testamentary intent was not litigated in the Family Court proceedings and indeed would have been beyond the court's jurisdiction, we are satisfied that the doctrine has no application in the circumstances of the present case.

Although we vacate the judgment and remand the case for further proceedings in the Superior Court, we address the remaining issues raised on appeal insofar as they may arise on remand.

## C

### Life Insurance Proceeds

The plaintiff argues that the hearing justice erred in sua sponte reducing the amount of her bequest by the amount of the proceeds of a life insurance policy that testator had purchased, naming plaintiff as the beneficiary. We agree. We perceive no basis for linking the life insurance proceeds with the $2,000,000 bequest. The defendant had not raised the issue in the summary-judgment proceedings, and we deem it error for the hearing justice to have done so.

---

settlement agreements and all other contracts between persons, who at the time of execution of the contracts, were husband and wife or planned to enter into that relationship * * *."

## D

## Prejudgment Interest

The plaintiff further contends that she is entitled to prejudgment interest because the bequest "arises out of the contractual obligation in the * * * agreement requiring [testator] to irrevocably make that bequest." Specifically, plaintiff asserts that, since the agreement directs that the bequest be enforced against testator's estate, her "claim accrued at the expiration of the six month period for the filing of claims," and hence prejudgment interest "should be added" to her award.

The defendant countered that the trial justice did not err because this case is not an action "for pecuniary damages to which prejudgment interest * * * [is] applicable."

"The Rhode Island prejudgment interest statute was enacted to promote expeditious settlement of claims." Roy v. Star Chopper Co., 584 F.2d 1124, 1135 (1st Cir. 1978). "Prejudgment interest 'serves two purposes: it promotes early settlements, and more importantly, it compensates persons for the loss of use of money that was rightfully theirs.'" Blue Ribbon Beef Co. v. Napolitano, 696 A.2d 1225, 1229 n. 3 (R.I. 1997) (quoting Murphy v. United Steelworkers of American Local No. 5705, AFL-CIO, 507 A.2d 1342, 1346 (R.I. 1986)).

Rhode Island's prejudgment interest statute, G.L. 1956 § 9-21-10(a), provides, in pertinent part, that:

> "In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum * * *. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein." (Emphasis added.)

Black's Law Dictionary defines "pecuniary" as "[o]f or relating to money; monetary." Black's Law Dictionary 1167 (8th ed. 2004). Likewise, "pecuniary damages" are defined as "[d]amages that can be estimated and monetarily compensated."[9] Id. at 418.

In Gott v. Norberg, 417 A.2d 1352, 1357 (R.I. 1980), this Court held that § 9-21-10(a) applied to both contract and tort "litigants to collect interest on judgments." In so doing, this Court employed a historical analysis to construe the Legislature's intent. Gott, 417 A.2d at 1357. Specifically, this Court cited to Casavant v. Campopiano, 114 R.I. 24, 28, 327 A.2d 831, 834 (1974) and Rhode Island Dairy Queen, Inc. v. Burke, 101 R.I. 644, 646-47, 226 A.2d 420, 421-22 (1967), where the plaintiffs were "denied recovery of interest because [the statute] did not encompass actions sounding in contract." Gott, 417 A.2d at 1357. In particular, this Court noted that "[t]he Legislature responded with the addition of the words 'civil action' in 1976." Id. Therefore, this Court concluded that the Legislature intended to align tort and contract plaintiffs to receive prejudgment interest on judgments. See id.

Similarly, in Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co., 763 A.2d 590 (R.I. 2000), we concluded that § 9-21-10(a) did not apply to reimbursement actions for workers' compensation claims, pursuant to G.L. 1956 chapter 34 of title 27 (the Insolvency Fund Act), because "[t]he reimbursement that the [plaintiff] [was] permitted to recover [was] set forth in the Insolvency Fund Act, and therefore, * * * § 9-21-10 [was] inapplicable * * *." Leviton Manufacturing Co., 763 A.2d at 597-98.

Here, plaintiff avers that prejudgment interest should be added to the award because the claim "arises out of the contractual obligation in the * * * agreement." We disagree. Though we

---

[9] Black's Law Dictionary hedges this definition with a statement indicating that the aforementioned definition is "widely considered a redundancy—since damages are always pecuniary." Black's Law Dictionary 418 (8th ed. 2004).

acknowledge that prejudgment interest is appropriate for the enforcement of property-settlement agreements, see Donelan v. Donelan, 741 A.2d 268, 270 (R.I. 1999) (indicating that property-settlement agreement not merged with divorce judgment is governed by contract law), we believe that is not the case at bar. The crux of the matter now before us is not a breach of the agreement, as the will conforms to the agreement—but the bequest in the will. As such, the award was testamentary and not pecuniary. Therefore, because this case "is neither a contract claim nor a tort claim," we conclude that the trial justice did not err in refusing to add prejudgment interest to plaintiff's claim. See In re Estate of Cantore, 814 A.2d 331, 335 (R.I. 2003).

## E

### Attorney's Fees

Finally, defendant asserts that the Superior Court had no authority to award counsel fees in this case since plaintiff's "civil actions on their face were not for breach of contract." Further, defendant argues that attorney's fees are only to be awarded in actions "where there is a complete absence [of] justiciable issue[s] of fact or law," whereas plaintiff's claim "raises justiciable issues regarding the construction of the [w]ill." Furthermore, defendant contends that the trial justice's decision to award attorney's fees was fatally flawed because the trial justice "did not even purport to make the findings that are a statutory prerequisite to an award of attorney's fees * * *."

The plaintiff, conversely, contends that the trial justice did not err in awarding attorney's fees because "there was a complete absence of a justiciable issue of either law or fact raised by the losing party." Specifically, plaintiff claims that the action arises "out of the * * * agreement executed in 1993," which was a "full and final adjudication."

- 14 -

General Laws 1956 § 9-1-45(1) permits a court to award reasonable attorney's fees to a prevailing party "in any civil action arising from a breach of contract" when the court finds "that there was a complete absence of a justiciable issue of either law or fact raised by the losing party."

"A trial justice's award of attorney's fees is subject to review for abuse of discretion." Cantore, 814 A.2d at 334. "In conducting such a review, the discretion exercised by the trial justice must be reviewed 'in light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law.'" Id. (quoting Rhode Island Insurers' Insolvency Fund, 763 A.2d at 598). Moreover, "[t]he issue of whether there exists a basis for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is de novo." America Condominium Association, Inc. v. Mardo, 140 A.3d 106, 115 (R.I. 2016) (quoting Dauray v. Mee, 109 A.3d 832, 845 (R.I. 2015)).

In light of our previous analysis, it is clear to us that this is not a "civil action arising from a breach of contract"; moreover, there does exist a justiciable issue concerning testator's testamentary intent which requires litigation and factfinding. Consequently, we find no basis under § 9-1-45 for an award of attorney's fees.

# V

## Conclusion

For the foregoing reasons, we vacate the judgment of the Superior Court, and remand the matter for further proceedings. The record of this case shall be returned to the Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Marcia Sallum Glassie v. Paul Doucette, in his capacity as Executor of the Estate of Donelson C. Glassie, Jr. |
| **Case Number** | No. 2015-276-Appeal. (NC 12-184) No. 2015-277-Appeal. (NC 12-261) |
| **Date Opinion Filed** | May 10, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Flaherty, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Walter R. Stone |
| **Attorney(s) on Appeal** | For Plaintiff: Joseph R. Palumbo, Jr., Esq. |
| | For Defendant: R. Daniel Prentiss, Esq. |