June 27, 2024

**Supreme Court**

No. 2023-163-Appeal.
(NP 19-213)

Marcia Sallum Glassie          :

v.          :

Paul Doucette, in his capacity as          :
Executor of the Estate of Donelson
C. Glassie.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Marcia Sallum Glassie　　　　　:

v.　　　　　　　:

Paul Doucette, in his capacity as　　:
Executor of the Estate of Donelson
C. Glassie.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Chief Justice Suttell, for the Court.** This appeal concerns a dispute over the will of the late Donelson C. Glassie (the testator). The plaintiff, Marcia Sallum Glassie, is the testator's former wife. She appeals from a Superior Court judgment in favor of the defendant, Paul Doucette, in his capacity as Executor of the Estate of Donelson C. Glassie. The Superior Court affirmed an order of the Newport Probate Court denying the plaintiff's petition for leave to file a claim out of time against the estate. The denied claim would have alleged a breach of contract, based on the plaintiff's contention that a key provision of the testator's will violated the terms of the couple's property-settlement agreement. After reviewing the record and considering the parties' written and oral arguments, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

The plaintiff and the testator were married in 1986, had three children, and were divorced in 1993. *Glassie v. Doucette*, 159 A.3d 88, 91 (R.I. 2017) (*Glassie I*). According to their property-settlement agreement (PSA), the testator was to execute a will that would not only treat his obligations under the PSA as "a claim against any assets in [his] [e]state" but also "specifically bequest to [plaintiff] an amount equal to said obligations." The PSA further provided that "[t]he obligation of [the testator] to maintain said assets and to bequest said sum to [plaintiff] shall be subject to modification by the Family Court from time-to-time as the obligations of [the testator] diminish under [the PSA]."

A dispute soon unfolded over what the PSA required of the testator's will. In 1997, a Family Court justice determined that plaintiff was "entitled under the language of the [PSA] to the bequest of a sum certain equal to [the testator's] obligations." That sum was a "fixed figure," the hearing justice explained, and one that would "continue unless" the testator petitioned the Family Court for modifications consistent with any changes to his obligations. Following the decision of the Family Court, the testator executed a will that he soon amended with a codicil, which provided, in relevant part, that he would "give, devise and bequeath to [plaintiff] * * * the sum of $2,000,000.00, or such other amount as shall be then

required to fully satisfy all of [his] remaining obligations and responsibilities" under the PSA. According to a stipulation filed in Family Court, plaintiff found this language "to be in full compliance with the" relevant provision of the PSA, and, in 1999, the testator executed a new will incorporating the language of the codicil in full.

Not once before his death on February 3, 2011, did the testator return to Family Court and seek modifications to the bequest in his will. *Glassie I*, 159 A.3d at 92. On May 3, 2012, plaintiff filed a $2,000,000 claim against the testator's estate in the Newport Probate Court, which defendant disallowed the following week, on May 11, 2012. *See id.* The dispute then made its way to Superior Court, and, in 2015, plaintiff was awarded $2,000,000, less the proceeds of a life insurance policy that she received upon the testator's death, as well as attorneys' fees. *Id.* at 92-93.

In 2017, this Court vacated the Superior Court judgment on multiple grounds. *Glassie I*, 159 A.3d at 95-98. Relevant to the present appeal, we determined "that the disputed provision in the will is ambiguous" because it "does not clearly specify under what circumstances plaintiff is to receive the sum of $2,000,000 or the circumstances under which she is to receive such other amount necessary to satisfy all of [the testator's] remaining obligations." *Id.* at 94-95. Because "a proper resolution of this matter require[d] factfinding and conclusions of law with respect to [the] testator's intent," we remanded the case to the Superior Court. *Id.* at 95.

- 3 -

Back in Superior Court, plaintiff sought to amend her complaint with a claim for breach of contract. At this stage, she framed her claim as prospective, if not conditional, in nature. If the ambiguous provision were ultimately construed in a manner that, in plaintiff's opinion, was "at odds with [the testator's] obligations under the PSA," then the testator's conduct, in drafting that provision, "would amount to a breach of his obligations under the PSA to ensure the bequest to [plaintiff]." In other words, if the provision were construed in defendant's favor, plaintiff would have a claim for breach of contract; but if instead the provision were construed in plaintiff's favor, there would be no such claim.

The Superior Court denied plaintiff's motion to amend her complaint, in part because she did not first submit the claim to the probate court, and also because the applicable statute of limitations had expired. The plaintiff thereafter filed a petition in the Newport Probate Court for leave to file a claim out of time and, after the court denied her petition, she appealed that denial to the Superior Court.

On March 9, 2020, the Superior Court held a bench trial on plaintiff's appeal from the denial of her petition to file a late claim for breach of contract. The plaintiff refined the basic contours of her argument at trial. To begin, she noted that, in 2017, this Court held that the disputed will provision is ambiguous and remanded the matter to the Superior Court for "factfinding and conclusions of law with respect to [the] testator's intent." *Glassie I*, 159 A.3d at 95. This created some "uncertainty,"

plaintiff explained, because if the factfinder determined that the testator intended not to grant plaintiff a "specific monetary bequest * * * subject to modification [only] by the Family Court or by agreement of the parties," then, in acting upon this intent, the testator violated his obligations under the PSA. The contract claim was therefore conditional; indeed, it would not ripen unless the factfinder determined that "the will mean[t] something noncompliant with the PSA."

The plaintiff's statements at trial shed further light on her claim for breach of contract. For one, plaintiff testified that, although she had objected to earlier versions of the testator's will, the two had stipulated that the 1998 will and codicil were "in full compliance" with the PSA. She also indicated that she was not aware until after his death that the testator executed a new will in 1999; this wrinkle, however, did not inform her breach-of-contract claim.

A significant issue at trial, and one critical to the eventual Superior Court decision, was plaintiff's contemporaneous understanding of defendant's reason for disallowing her 2012 claim against the estate for $2,000,000. On cross-examination, defense counsel questioned plaintiff about the timing of her claim for breach of contract. After establishing that she did not make her contract claim "until after" this Court's 2017 decision about the disputed will provision, defense counsel asked plaintiff whether she decided to make this claim "because the Supreme Court said that the" provision was ambiguous. "That's correct," plaintiff said.

- 5 -

Next, over the objection of plaintiff's counsel, defense counsel asked plaintiff whether she would characterize an "ambiguous" document as one "that's capable of being read in more than one way[.]"  "Sure," she said.  Defense counsel thereafter initiated the following exchange:

> "[DEFENSE COUNSEL]: * * * Did you make a request of [defendant] to pay you two million dollars based on the way you read the will?
>
> "[PLAINTIFF]: We made a claim, yes.
>
> "[DEFENSE COUNSEL]: And * * * you understood that [defendant] responded by denying your claim because that's not the way he read the will, correct?
>
> "[PLAINTIFF]: Correct.
>
> "[DEFENSE COUNSEL]: So you knew in 2012 that there were two different ways of reading the will, your way and the way [defendant] read it; correct?
>
> "[PLAINTIFF]: And then in 2015, [the trial justice] read it the way I read it.
>
> "[DEFENSE COUNSEL]: But just focusing back again on my question.  You knew in 2012 that [defendant] read the will in a different way from the way you read the will, correct?
>
> "[PLAINTIFF]: I'm not sure about that.  He denied the claim but I'm not sure what reasons he used at the time.  I really can't say."

Defense counsel returned to this line of questioning after addressing another matter:

> "[DEFENSE COUNSEL]: And then it came to pass that you made a claim under your interpretation of the will and

[defendant] denied it.  At that point you were aware that [he] disagreed with the way you read the will, correct?

"* * *

"[PLAINTIFF]: I don't know why he denied it, actually.

"[DEFENSE COUNSEL]: When did you first learn why he denied it?

"[PLAINTIFF]: I don't really remember, sometime in 2012, 2013.  I don't know.

"[DEFENSE COUNSEL]: But sometime in 2012 or '13 you learned that he had denied it because he disagreed with the way you interpreted the will?

"[PLAINTIFF'S COUNSEL]: Objection, your Honor. Speculation.

"THE COURT: Overruled.  I think that's what she said.

"[PLAINTIFF]: I don't know why he denied it because the only -- because my understanding was that the only method to change the amount in the will, the amount of the bequest, was if [the testator] had returned to court while he was alive to petition the [c]ourt to change the amount. * * * I don't know why he denied it.

"[DEFENSE COUNSEL]: Well, I thought you had said that you learned in 2012 or 2013 why he denied it, was that a misstatement on your part?

"[PLAINTIFF]: Yes."

A similar line of questioning occurred with respect to litigation between the parties in 2015, which culminated in the Superior Court judgment that this Court vacated and remanded in 2017. *See Glassie I*, 159 A.3d at 91.  In that exchange, defense

- 7 -

counsel asked whether plaintiff had read one of defendant's filings in that litigation, to wit, a memorandum in support of summary judgment, at the time that it was filed. She responded that she had; defense counsel then asked, over another objection of plaintiff's counsel, whether plaintiff was "aware when [she] read the memorandum in 2015 that [defendant] had a different interpretation of" the will provision. "Well, yes," she said, "otherwise we wouldn't be here." Defense counsel continued, once again over the objection of plaintiff's counsel: "[S]o as of that time, at the very latest, you knew that there were two different interpretations of the will, * * * correct?" To this question, plaintiff responded in the affirmative, but she would not further affirm defense counsel's suggestion that "[she] knew then that the will was ambiguous[.]" (Later, on redirect examination, plaintiff's counsel asked whether she agreed that "the fact that one person takes a position with respect to what a document means doesn't mean that [the position] is reasonable * * *." Before plaintiff could answer, however, the trial justice said that he "d[id]n't know if her opinion on that [would] make a difference in [his] opinion, especially in this case," and plaintiff's counsel withdrew the question.)

A third line of questioning concerned the nearly two-year lapse between this Court's 2017 decision, discussed above, and plaintiff's attempt to make a claim for breach of contract. The plaintiff noted that she and defendant were in mediation for some of that time. She further acknowledged that, although "[she] knew in * * *

2017 all of the facts that" formed the basis of her contract claim, she did not bring the claim until after "the mediation fail[ed]."

In a written decision filed on September 2, 2020, the trial justice affirmed the probate court and denied plaintiff's petition to bring a claim for breach of contract. To begin his analysis, the trial justice explained that plaintiff's petition was governed by G.L. 1956 § 33-11-5(b), which provides an exception to the general rule, codified at § 33-11-5(a), that claims against a decedent's estate are "forever barred" unless "presented within six (6) months from the first publication" of the estate. According to § 33-11-5(b):

> "A creditor who, by reason of accident, mistake, excusable neglect or lack of adequate notice of decedent's estate, failed to present a claim within six (6) months from the first publication, may before distribution of the estate, petition the probate court for leave to present a claim out of time."

Applying this standard, the trial justice found that plaintiff's failure to bring her contract claim within six months of the publication of the testator's estate was not due to excusable neglect and thus her claim was forever barred. Central to his finding was plaintiff's concession "that she knew in 2012," some seven years before seeking to amend her complaint, that she and defendant held conflicting interpretations of the disputed will provision; specifically, "that [defendant] read the * * * provision differently than she did." The trial justice further characterized this conflict as the "central issue" in the parties' 2015 litigation, during which, the trial

- 9 -

justice noted, defendant had presented arguments that assumed the provision to be ambiguous. According to the trial justice, plaintiff's participation in the 2015 litigation, not to mention the disallowance of her 2012 claim against the estate, "should have alerted her of the potential alleged breach of contract claim." Applying well-established caselaw on the excusable-neglect standard, the trial justice determined that plaintiff, in waiting seven years to file her breach-of-contract claim, "failed to act as a reasonably prudent person" and therefore could not meet the requirements of § 33-11-5(b). *See Duffy v. Estate of Scire*, 111 A.3d 358, 366 (R.I. 2015).

Following this decision, plaintiff filed a motion under Rule 52(b) of the Superior Court Rules of Civil Procedure, which enables movants to request that a court amend its findings, make additional findings, or amend the judgment within ten days after judgment enters. According to plaintiff, her claim for breach of contract did not accrue (indeed, did not exist) until after the six-month period delineated in § 33-11-5(a) had passed, and so the trial justice erred by applying that statute to her claim. Instead, plaintiff argued, the general ten-year statute of limitations, codified at G.L. 1956 § 9-1-13(a), governed her claim, and thus her claim had not yet expired in 2019 when she filed her petition in probate court. After hearing the issue on November 18, 2020, the trial justice denied plaintiff's Rule 52(b) motion the following month. The Superior Court entered judgment in favor

- 10 -

of defendant on August 23, 2022, and plaintiff filed a timely notice of appeal on September 9, 2022.

## II

## Standard of Review

"It is well established that a probate appeal to the Superior Court is *de novo* in nature." *Smile of the Child v. Estate of Papadopouli*, 272 A.3d 99, 105 (R.I. 2022) (quoting *Larkin v. Arthurs*, 210 A.3d 1184, 1190 (R.I. 2019)). "On our appellate review, however, 'the factual findings of a trial justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence.'" *Id.* at 106 (quoting *Larkin*, 210 A.3d at 1190). "If, in our review of the record, it becomes clear to us that the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for that of the trial justice even though a contrary conclusion could have been reached." *Id.* (quoting *Larkin*, 210 A.3d at 1190).

## III

## Discussion

The plaintiff makes two arguments on appeal. First, she argues that the Superior Court incorrectly found that her claim for breach of contract accrued in 2012, when defendant disallowed her claim against the testator's estate. Second, she

contends that § 33-11-5 does not govern her claim and that the Superior Court erred in applying that statute's six-month limitations period instead of the ten-year period codified at § 9-1-13(a).

The trial justice determined, based on defense counsel's cross-examination of plaintiff during the March 9, 2020 bench trial, that plaintiff "knew in 2012" that she and defendant held conflicting interpretations of the disputed will provision. That determination is a "factual finding[] of a trial justice sitting without a jury" and is thus "accorded great weight" on this Court's appellate review. *Smile of the Child*, 272 A.3d at 106. Therefore, even if plaintiff arguably did not concede at trial that she knew in 2012 that defendant read the will provision differently than she did, or even if she did concede and thereafter retracted her concession, neither view of the evidence will supersede that of the trial justice unless the latter is not supported by competent evidence. *Id.* In any event, plaintiff does not challenge this finding on appeal, and she appears to concede in her brief that she learned "that [defendant] held a different reading of [the provision] when her claim was" disallowed in 2012. This Court will therefore proceed as if plaintiff knew in 2012 that she and defendant held conflicting interpretations of the disputed will provision.

The plaintiff's first argument on appeal concerns the accrual date of her claim for breach of contract. According to plaintiff, the trial justice incorrectly found that the claim accrued in 2012, when it "accrued, at the earliest, in 2017," after this Court

held the will provision ambiguous and remanded the matter to the Superior Court. *See Glassie I*, 159 A.3d at 95. It was our decision in *Glassie I*, plaintiff contends, that, "for the first time, created the possibility" that a factfinder would construe the provision in a manner "inconsistent with [the testator's] contractual obligations under the PSA." Only then, plaintiff explains, did she "learn[] that the * * * language" of the will provision "might not satisfy [the testator's] contractual obligations."

In our opinion, however, this "possibility" arose at least five years earlier, in 2012, when defendant disallowed plaintiff's $2,000,000 claim against the estate based—as she concedes then to have known—on his conflicting interpretation of the will provision. As soon as this happened, plaintiff reasonably should have known there was a possibility, however remote in her view, that a factfinder would construe the provision against what she asserts to be the testator's obligations under the PSA. The plaintiff, however, waited another seven years before filing her claim for breach of contract, and the trial justice found that it was not excusable neglect for her to do so. Because the existence of excusable neglect is a question of fact, we accord that finding great weight; and, at any rate, we see no reason to reach a contrary conclusion. *See Rivera v. Rose*, 14 A.3d 939, 945 (R.I. 2011); *Smile of the Child*, 272 A.3d at 106.

- 13 -

We now turn to plaintiff's second argument on appeal, which concerns the applicability of § 33-11-5(b) to her claim for breach of contract. Section 33-11-5(b) creates an exception to § 33-11-5(a), which bars claims against a decedent's estate that are not "presented within six (6) months from the first publication" of the estate. If a creditor "fail[s] to present a claim" within that six-month period "by reason of accident, mistake, excusable neglect or lack of adequate notice of decedent's estate," § 33-11-5(b) permits the creditor, "before distribution of the estate," to petition "for leave to present a claim out of time." The plaintiff argues that subsection (b)— indeed, the entire statute—is inapplicable because the trial justice determined that her "claim did not accrue until May 11, 2012," which, she observes, was more than six months after the first publication of the estate. She further contends that subsection (b) applies only to claims that could have been presented within the six-month period required under subsection (a) but, for one of four stated reasons, including excusable neglect, were not presented in time. According to plaintiff, however, her claim for breach of contract "simply did not exist" before the expiration of that six-month period, thus making the statute inapposite to her claim. For that reason alone, plaintiff argues that her claim should be subject instead to the general ten-year statute of limitations codified at § 9-1-13(a).

The defendant may have denied plaintiff's $2,000,000 claim against the estate more than six months after first publication, but that does not mean that § 33-11-5 is

- 14 -

inapposite to her contract claim. Had plaintiff sought to file the latter claim as soon as the former was denied, perhaps there would have been a finding of excusable neglect. The question before the trial justice, however, was whether it was excusable neglect for plaintiff to file her claim, not in 2012, but in 2019. On this question, the trial justice determined that plaintiff "knew in 2012" that defendant disallowed her $2,000,000 claim against the estate based on defendant's conflicting interpretation of the will provision at issue, which should have alerted her to a potential claim for breach of contract. Because a "reasonably prudent person * * * under similar circumstances" would not have waited another seven years before seeking to bring such a claim, he next found that plaintiff's delay was not the result of excusable neglect. (Quoting *Duffy*, 111 A.3d at 366.) Accordingly, the trial justice concluded that plaintiff was not entitled to an extension under § 33-11-5(b) and thus affirmed the denial of her petition to file a claim out of time.

Based on our review of the record, we see no reason to disturb these factual findings of the trial justice. The plaintiff concedes that she knew in 2012 that the defendant disallowed her $2,000,000 claim against the estate because he read the will provision at issue differently than she did. If that is true, then the plaintiff was aware in 2012 of the facts that underlie her breach-of-contract claim. That claim alleges that the testator, the plaintiff's former husband, violated his obligations under the PSA because the language of his will falls short of what, in the plaintiff's view,

- 15 -

the terms of the PSA require.  Although the plaintiff should have been aware of her potential claim in 2012, she did not seek to amend her complaint until 2019.  This was some four years after the parties litigated a dispute, in Superior Court, over the meaning of the will provision, not to mention almost two years after this Court issued the decision that, according to the plaintiff, first provided notice of her claim.  In short, we agree with the trial justice that the plaintiff's failure to timely present her claim for breach of contract was not due to excusable neglect and, therefore, her claim must be denied.

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The papers in this case may be remanded to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Marcia Sallum Glassie v. Paul Doucette, in his capacity as Executor of the Estate of Donelson C. Glassie. |
| **Case Number** | No. 2023-163-Appeal. (NP 19-213) |
| **Date Opinion Filed** | June 27, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiff: Jeffrey K. Techentin, Esq. |
| | For Defendant: Daniel R. Prentiss, Esq. |